UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 cv 2417 |
| | ) | |
| MARK ROSS; JOSEPH PONSETTO; EDWARD C. | ) | |
| CARTER, III; JORGE L. MONTES; NORMAN M. | ) | |
| SULA; and KENNETH D. TUPY, | ) | |
| | ) | |
| Defendants. | ) | |

# **FIRST AMENDED COMPLAINT AT LAW**

The Plaintiff, **VICTOR BROOKS**, (hereinafter "Plaintiff"), by his attorney, A. BODDIE, Attorney at Law, and complaining of Defendants, **MARK ROSS; JOSEPH PONSETTO; EDWARD CARTER, III; JORGE L. MONTES; NORMAN M. SULA**; and **KENNETH D. TUPY**, alleges as follows:

### *Preliminary Statement*

This is a civil action seeking money damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitutions and laws of the United States and the State of Illinois; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection and due process of the laws; and for refusing or neglecting to prevent such deprivation and denials to Plaintiff pursuant to 42 U.S.C., Sections 1983 and 1988. This action is also seeking compensatory and punitive damages from the individual Defendants for their willful, wanton, malicious

1

and unconscionable disregard and perversion of settled law.

### a. Jurisdiction and Venue.

1. This action arises under the under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; Section 42 U.S.C., Section 1983; and 42 U.S.C., Section 1988.

2. Jurisdiction and venue is properly in this Court pursuant to 28 U.S.C., Sections 1441(b) and (c) and 1446.

3. This Courts pendent and supplemental jurisdiction is invoked for this Court to decide claims which may arise under State law.

### b. Parties.

4. Plaintiff is and was, at all times material herein, a citizen of the United States.

5. Plaintiff was, at all times material herein, a citizen and resident of the State of Illinois and Missouri.

6. Plaintiff is a resident of the City of Florissant, in the County of St. Louis and State of Missouri.

7. Defendant, MARK ROSS, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed Illinois State Police Officer and/or acting official, officer and/or employee of the State of Illinois.

8. Defendant, JOSEPH PONSETTO, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed Assistant Illinois Attorney General and/or acting official, officer and/or employee of the

State of Illinois.

9. Defendant, EDWARD C. CARTER, III, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed Assistant Illinois Attorney General and/or acting official, officer and/or employee of the State of Illinois.

10. Defendant, JORGE L. MONTES, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed Member of the Illinois Prisoner Review Board and/or acting official, officer and/or employee of the State of Illinois.

11. Defendant, NORMAN M. SULA, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed Member of the Illinois Prisoner Review Board and/or acting official, officer and/or employee of the State of Illinois.

12. Defendant, KENNETH D. TUPY, was at all times material to this action, a citizen of the United States and a resident of the State of Illinois, and a duly appointed employee of the Illinois Prisoner Review Board and/or acting official, officer and/or employee of the State of Illinois.

13. Defendants, MARK ROSS, JOSEPH PONSETTO, EDWARD C. CARTER, III, JORGE L. MONTES, NORMAN M. SULA and KENNETH D. TUPY, were, at all times material to this action, acting under color of state law, to

wit: under color of the statutes, regulations, policies, rules, customs and usages of the State of Illinois.

### b. Facts.

14. From 1977 to and including 1993, Plaintiff was employed in the Illinois Department of Corrections in positions such as Corrections Counselor, Assistant Warden and Warden.

15. From 1980 to and including 2004, Ronald Matrisciano was employed in the Illinois Department of Corrections, starting in the position of Parole Agent.

16. Plaintiff and Ronald Matrisciano have known each other since about 1980, as fellow employees in the Illinois Department of Corrections.

17. On or before August 7, 1995, Plaintiff was nominated by then Illinois Governor Jim Edgar for appointment as a Member on the Illinois Prisoner Review Board, and was duly appointed and commissioned a Member of the said Illinois Prisoner Review Board.

18. On or before May 10, 2001, Plaintiff was re-nominated by then Illinois Governor George Ryan for re-appointment as a Member on the Illinois Prisoner Review Board, and was duly re-appointed and re-commissioned a Member of the said Illinois Prisoner Review Board.

19. During 2002, Ronald Matrisciano was the Assistant Deputy Director, District One, Illinois Department of Corrections, and Stateville Correctional Center was within the said District One.

20. In early 2002, during one of Plaintiff's official visits to

Stateville Correctional Center, Joliet, Illinois, Ronald Matrisciano approached Plaintiff and disclosed to Plaintiff Ronald Matrisciano's intention to testify before the Illinois Prisoner Review Board in support of Inmate Harry Aleman's parole.

21. On the same day and time that Ronald Matrisciano approached Plaintiff in early 2002, Ronald Matrisciano also approached several other Members of the Illinois Prisoner Review Board, including Defendants Jorge L. Montes and Norman M. Sula.

22. Following the meeting between Plaintiff and Ronald Matrisciano at the Stateville Correctional Center, Plaintiff and Ronald Matrisciano had another conversation during which Plaintiff talked about a pending visit to Las Vegas, Nevada to see Plaintiff's son who had recently moved to Las Vegas.

23. During the September-October time frame of 2002, Ronald Matrisciano advised George De Tella, Associate Director, Illinois Department of Corrections that Ronald Matrisciano was going to testify before the Illinois Prisoner Review Board in favor of Inmate Harry Aleman's parole.

24. From 1999 to and including 2003, George De Tella was Associate Director of the Illinois Department of Corrections, and George De Tella's immediate supervisor at the Illinois Department of Corrections was Donald N. Snyder, Jr.

25. From 1999 to and until May 30, 2003, Donald N. Snyder, Jr. was the Director of the Illinois Department of Corrections.

26. From 1999 to and until April 2003, Nancy L. Miller was Chief of the Bureau of Operations of the Illinois Department of Corrections.

27. From January 2001 to and including December 2005, Sergio Molina was Chief of Communications for the Illinois Department of Corrections.

28. During the October-November time frame of 2002, Ronald Matrisciano called Sergio Molina by telephone and asked Sergio Molina to help Ronald Matrisciano to get a telephone through to Plaintiff.

29. Later when Sergio Molina was physically near Plaintiff, Sergio Molina called Ronald Matrisciano by telephone, and when Ronald Matrisciano was on the telephone, Sergio Molina gave the telephone to Plaintiff so that Ronald Matrisciano could talk to Plaintiff.

30. During the said telephone conversation between Ronald Matrisciano and Plaintiff, Ronald Matrisciano discussed Ronald Matrisciano's plans to visit Las Vegas, Nevada and inquired about Ronald Matrisciano's interest it visiting with Plaintiff's son while Ronald Matrisciano was in Las Vegas.

31. During 2002, Anne R. Taylor was the Chairman of the Illinois Prisoner Review Board.

32. On November 5, 2002, Rod R. Blagojevich won the General Election for Governor of Illinois.

33. During the November-December time frame of 2002, during a meeting of the Illinois Governor's Cabinet in the Governor's

Mansion in Springfield, Illinois, the said George De Tella advised the said Anne R. Taylor that Ronald Matrisciano was going to testify before the Illinois Prisoner Review Board in favor of Inmate Harry Aleman's parole.

34. When Anne R, Taylor was advised by George De Tella that Ronald Matrisciano was going to testify before the Illinois Prisoner Review Board, Anne R. Taylor advised George De Tella to write a letter or appear to testify on the inmate's behalf.

35. During the three (3) week period prior to December 16, 2002, both George De Tella and Nancy L. Miller assisted Ronald Matrisciano with the preparation of his written statement and testimony to the Illinois Prisoner Review Board.

36. Plaintiff is informed, believes and alleges that on or before December 16, 2002, a copy of Ronald Matrisciano's written statement was sent via facsimile to the Illinois Prisoner Review Board via facsimile number (217) 524-0012.

37. Plaintiff is informed, believes and alleges that on or before December 16, 2002, the copy of Ronald Matrisciano's written statement sent via facsimile to the Illinois Prisoner Review Board via facsimile number (217) 524-0012, was requested and received at the said Illinois Prisoner Review Board by Defendant Kenneth D. Tupy and/or Anne R. Taylor.

38. On or about December 17, 2002, Nancy L. Miller transported Ronald Matrisciano to the Dixon Correctional Center, Dixon,

Illinois for Ronald Matrisciano's testimony before the Illinois Prisoner Review Board.

39. On or about December 17, 2002, Nancy L. Miller was present at the hearing with Ronald Matrisciano during his testimony before the Illinois Prisoner Review Board in favor of Inmate Harry Aleman.

40. Prior to the occurrence of the December 17, 2002, Illinois Prisoner Review Board hearing for Inmate Harry Aleman, Defendant Jorge L. Montes received a telephone call from the said Anne R. Taylor advising Defendant Montes that the said George De Tella had advised her that the said Ronald Matrisciano was going to testify before the Illinois Prisoner Review Board in favor of Inmate Harry Aleman's parole.

41. On and before December 17, 2002, and for the second time, Ronald Matrisciano contacted Plaintiff and several other members of the Illinois Prisoner Review Board regarding his support for the parole of Illinois Department of Corrections Inmate Harry Aleman, including Defendants Jorge L. Montes and Norman M. Sula.

42. On December 17, 2002, prior to the start of Inmate Harry Aleman's hearing before the Prisoner Review Board at Dixon Corrections Center, Dixon, Illinois, Plaintiff advised Defendant Jorge L. Montes of his desire to be present during the hearing and Defendant Montes allowed Plaintiff to be present.

43. On December 17, 2002, during the Prisoner Review Board hearing of Inmate Harry Aleman, Defendant Jorge L. Montes welcomed

Plaintiff and encouraged Plaintiff to participate in the hearing.

44. On December 17, 2002, during the Prisoner Review Board hearing of Inmate Harry Aleman, Defendant Jorge L. Montes thanked Ronald Matrisciano for coming, and expressed his appreciation for Ronald Matrisciano's testimony.

45. On December 17, 2002, Ronald Matrisciano appeared and presented a prepared written statement in support of the parole of Inmate Harry Aleman at a hearing presided over by Defendant Jorge L. Montes with Plaintiff in attendance.

46. On or before December 17, 2002, no official connected with the Illinois Department of Corrections made any attempt to prevent Ronald Matrisciano from testifying before the Illinois Prisoner Review Board on behalf of Inmate Harry Aleman's parole.

47. On or before December 17, 2002, no official connected with the Illinois Prisoner Review Board made any attempt to prevent Ronald Matrisciano from testifying before the Illinois Prisoner Review Board on behalf of Inmate Harry Aleman's parole, including Defendants Jorge L. Montes, Norman M. Sula or Kenneth D. Tupy.

48. On December 19, 2002, and at all times material to this action, it was the law in Illinois and the policy of the Illinois Prisoner Review Board that a minimum of eight (8) favorable votes were required to grant parole to Inmate Harry Aleman.

49. On or about December 19, 2002, Plaintiff together with ten (10) other Members of the Illinois Prisoner Review Board participated in

Illinois Prisoner Review Board proceedings regarding the pending parole hearing of Inmate Harry Aleman, including Defendants Jorge L. Montes and Norman M. Sula.

50. During the Prisoner Review Board Hearing on December 19, 2002, Defendant Jorge L. Montes made a presentation to the remaining ten (10) present Board Members regarding the pending parole hearing.

51. At the conclusion of Defendant Jorge L. Montes' said presentation on December 19, 2002, Defendant Montes made a motion to deny parole to Inmate Harry Aleman, and the said motion was seconded.

52. Following the seconding of Defendant Jorge L. Montes's motion to deny parole to Inmate Harry Aleman on December 19, 2002, the Chairman Anne R. Taylor then called for a unanimous vote in favor of Defendant Montes' motion to deny parole to Inmate Harry Aleman.

53. On December 19, 2002, in response to Chairman Anne R. Taylor's call for a unanimous vote in favor of Defendant Montes' motion to deny parole to Inmate Harry Aleman, Plaintiff requested a roll call vote.

54. On December 19, 2002, on request of Plaintiff, Chairman Anne R. Taylor directed a roll call vote of the eleven present Illinois Prisoner Review Board Members.

55. On or about, December 19, 2002, Plaintiff together with ten (10) other Members of the Illinois Prisoner Review Board participated in Illinois Prisoner Review Board proceedings

regarding the pending parole hearing of Inmate Harry Aleman, and in participating, Plaintiff provided the one (1) vote in opposition to Defendant Jorge L. Montes' motion to deny parole for the said Harry Aleman.

56. At the conclusion of the roll call vote on Defendant Jorge L. Montes' motion to deny parole to Inmate Harry Aleman, Prisoner Review Board Member Milton A. Maxwell moved, and it was seconded, that Inmate Harry Aleman's parole eligibility hearing be continued for three (3) years from the date of the denial on December 19, 2002.

57. Following the seconding of Milton A. Maxwell's motion to continue Inmate Harry Aleman's parole eligibility hearing to December 2005 on December 19, 2002, eight (8) Board Members voted in favor of the said motion and three (3) Board Members voted in opposition, and those voting in opposition included Plaintiff and Defendant Montes.

58. On, before or after December 19, 2002, no Member of the 15-member Illinois Prisoner Review Board has stated that Ronald Matrisciano offered any Member of the Board anything of value in return for the member's vote in favor of Inmate Harry Aleman's parole.

59. On, before or after December 19, 2002, no Member of the 15-member Illinois Prisoner Review Board has stated that Plaintiff offered any Member of the Board anything of value in return for the

member's vote in favor of Inmate Harry Aleman's parole.

60. On, before or after December 19, 2002, no Member of the 15-member Illinois Prisoner Review Board has stated that Plaintiff made any attempt to persuade any Member of the Board to cast the member's vote in favor of Inmate Harry Aleman's parole.

61. On and after December 19, 2002, the Illinois Department of Corrections and Illinois Prisoner Review Board received numerous news media inquiries from news agencies regarding the parole hearing and proceedings of Inmate Harry Aleman, including the Chicago Tribune and the Chicago Sun-Times.

62. During December of 2002, following Ronald Matrisciano's appearance and testimony before the Illinois Prisoner Review Board on December 17, 2002, Sergio Molina was directed by Donald N. Snyder, Jr. to, and did, state to the Chicago Tribune that "We certainly don't condone a staff member presenting themselves before the Prisoner Review Board to advocate for an inmate."

63. On, about and after December 19, 2002, the Illinois Department of Corrections by its Chief of Investigations and Intelligence, Mary Elizabeth Hodge initiated an investigation/inquiry into the circumstances regarding Ronald Matrisciano's testimony before the Illinois Prisoner Review Board on behalf of Inmate Harry Aleman.

64. On or about December 23, 2002, at the direction of Donald N. Snyder, Jr., George De Tella demoted Ronald Matrisciano from his position as Assistant Deputy Director, District One, with the

Illinois Department of Corrections.

65. Plaintiff is informed, believes and alleges that Ronald Matrisciano's demotion on or about December 23, 2002, was due to Ronald Matrisciano's testimony December 17, 2002, before the Illinois Prisoner Review Board in favor and support of Inmate Harry Aleman's parole.

66. Plaintiff is informed, believes and alleges that on or about December 27, 2002, and at all times material to this action, Rachel McKinzie was an Assistant Legal Counsel in the Office of the Legal Counsel, Illinois Department of Corrections.

67. On or about December 27, 2002, Rachel McKinzie, issued a legal opinion wherein it was stated that the "Department [Illinois Department of Corrections] no longer has a written policy concerning staff recommendations to the Parole Board."

68. On or before January 17, 2003, the Illinois Department of Corrections by its Chief of Investigations and Intelligence, Mary Elizabeth Hodge referred its investigation and allegations of official misconduct against Ronald Matrisciano to the Illinois State Police.

69. On or before January 17, 2003, the Illinois State Police assigned the Illinois Department of Corrections' investigation and allegations of official misconduct against Ronald Matrisciano to the Illinois State Police, Division of Internal Investigation under File # 0300217, titled "Matrisciano, Ronald S., et al." with

Inspector Mark Ross, #9885 as the Case Agent.

70. On or about February 26, 2003, Defendant Mark Ross prepared an Investigative Report wherein it was alleged that "Matrisciano and an unknown member of a parole board, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman."

71. On or about March 3, 2003, Defendant Mark Ross allegedly interviewed an Illinois Department of Corrections Confidential Source who stated to Defendant Ross that in November of 2002, Harry Aleman described to the Confidential Source that "the black guy was "on board", and a "big shot" with IDOC was going [to] testify before the PRB in favor of Aleman receiving parole."

72. Plaintiff is informed, believes and alleges that on or about April 7, 2003, Ronald Matrisciano filed a civil action regarding employment related actions taken against him by the Illinois Department of Corrections in the United States District Court, Central District of Illinois, Springfield Division, in the Case of _Ronald Matrisciano v. Roger E. Walker, Jr., Director of the Department of Corrections of the State of Illinois, and Donald Snyder_, No. 03-3072.

73. Plaintiff is informed, believes and alleges that the Defendants were represented in the Case of _Ronald Matrisciano v. Roger E. Walker, Jr., Director of the Department of Corrections of the State of Illinois, and Donald Snyder_, No. 03-3072, by Assistant Attorneys

General from the Illinois Attorney General's Office.

74. On or about May 14, 2003, Ronald Matrisciano received written notice of his pending "lay off" from his employment with the Illinois Department of Corrections, with the said lay off having an effective date of May 30, 2003.

75. On or about May 30, 2003, Ronald Matrisciano was laid off from his employment with the Illinois Department of Corrections.

76. Plaintiff is informed, believes and alleges that on or about December 17, 2003, Ronald Matrisciano filed an appeal regarding his employment status with the Illinois Civil Service Commission in the Case of *Department of Corrections v. Ronald Matrisciano, RV-79-04*.

77. Plaintiff is informed, believes and alleges that the Illinois Department of Corrections was represented at the Illinois Civil Service Commission in the Case of *Department of Corrections v. Ronald Matrisciano, RV-79-04*, by Assistant Attorneys General from the Illinois Attorney General's Office.

78. Plaintiff is informed, believes and alleges that on or about March 1, 2004, Ronald Matrisciano was re-employed as an employee with the Illinois Department of Corrections.

79. Plaintiff is informed, believes and alleges that on or about May 20, 2004, the Illinois Civil Service Commission in the Case of *Department of Corrections v. Ronald Matrisciano, RV-79-04*, issued its findings and decision determining that the Illinois Department of Corrections violated State of Illinois Personnel Rules and

directing the said Department of Corrections to comply with the Illinois Personnel Code as it relates to the said violations.

80. On or about April 19, 2004, Defendant Mark Ross prepared an Investigative Report wherein it was alleged that "Matrisciano and an unknown member of the Illinois Prisoner Review Board (PRB) had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman."

81. On or about April 19, 2004, the Office of the Governor, Rod R. Blagojevich issued a News Release wherein it was stated that Defendant Jorge L. Montes was nominated as a member and chairman of the Illinois Prisoner Review Board effective May 1, 2004.

82. On or about April 19, 2004, the Office of the Governor, Rod R. Blagojevich issued a News Release wherein it was stated that Defendant Norman M. Sula was nominated as a member of the Illinois Prisoner Review Board effective May 1, 2004.

83. On or after April 19, 2004, Plaintiff was notified that Plaintiff was denied nomination as a Member of the Illinois Prisoner Review Board by then Illinois Governor Rod R. Blagojevich, and Plaintiff's tenue of eight (8) years and eight (8) months as a Member of the Illinois Prisoner Review Board was terminated effective May 1, 2004.

84. On or about May 11, 2004, Defendant Mark Ross prepared an Investigative Report wherein a summary was provided of Defendant Ross' interview of Defendant Jorge L. Montes.

16

85. On or about June 10, 2004, Defendant Mark Ross prepared an Investigative Report wherein a summary was provided of Defendant Ross' interview of Defendant Norman M. Sula.

86. During 2004, Plaintiff sought employment with the Illinois Department of Corrections, and despite Plaintiff's qualifications and experiences, Plaintiff was rejected for any such employment.

87. On or about January 6, 2005, Defendant Mark Ross prepared an Investigative Report wherein a summary was provided of Defendant Ross' interview of Inmate Harry Aleman.

88. On or about January 6, 2005, Defendant Mark Ross prepared an Investigative Report wherein it was alleged that "Matrisciano and an unknown member of the Illinois Prisoner Review Board (PRB), later identified as Victor Brooks, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman."

89. On or about January 19, 2005, Defendant Mark Ross prepared an Investigative Report wherein it was reflected that Defendant Joseph Ponsetto was present during Defendant Ross' interview of former Illinois Department of Corrections employee Nancy L. Miller.

90. On or about May 13, 2005, Defendant Mark Ross prepared an Investigative Report wherein it was reflected that Defendants Joseph Ponsetto and Edward C. Carter, III, were present and assisted during Defendant Ross' interview of former Illinois Department of Corrections employee Nancy L. Miller.

17

91. On or about June 28, 2005, Reporting Investigator Sledge prepared an Investigative Report wherein it was reflected that Defendants Joseph Ponsetto and Edward C. Carter, III, were present at a meeting and Investigator Sledge's interview of former Illinois Department of Corrections employee Nancy L. Miller.

92. On or about June 29, 2005, Defendant Mark Ross prepared an Investigative Report wherein it was alleged that "Matrisciano and an unknown member of the Illinois Prisoner Review Board (PRB) had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman."

93. On or before November 8, 2005, Defendant Mark Ross concluded the Illinois State Police Investigation under File # 0300217, titled "Matrisciano, Ronald S., et al." with an Investigative Summary  wherein it was alleged that "Matrisciano and an unknown member of the Illinois Prisoner Review Board (PRB) had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman."

94. On or after November 8, 2005, the Defendants Mark Ross, Joseph Ponsetto and/or Edward C. Carter, III, having determined through their investigations that there was no credible evidence to support the allegations that Plaintiff and/or any other unknown member of the Illinois Prisoner Review Board, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman, at least one or more of the Defendants fabricated the

allegation that Plaintiff accepted employment assistance for his Plaintiff's son in exchange for Plaintiff's favorable vote for Inmate Harry Aleman at the parole hearing for Inmate Aleman.

95. On or after December 17, 2002, at least one or more of the Defendants knowingly and intentionally gave and/or provided and/or used misleading and/or false information during the criminal investigations and/or inquiries of Plaintiff which played an essential and/or influential and/or significant role in the indictment for official misconduct, arrest and continued prosecution of Plaintiff.

96. On or after November 8, 2002, at least one or more of the Defendants knowingly and intentionally gave and/or provided and/or used misleading and/or false information which played an essential and/or influential and/or significant role in causing the prosecuting attorney to seek and/or pursue the Grand Jury indictment for official misconduct, arrest and continued prosecution of Plaintiff.

97. On or about December 9, 2005, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was indicted by Grand Jury, and charged with committing the offense of Official Misconduct in violation of Illinois Compiled Statutes, Chapter 720, Section 5/33-3(b), under Bill of Indictment Number 5 CF 336, Count V, in the Circuit Court of the Fifteenth Judicial Circuit, Lee County, Illinois, to wit:

**while acting in his official capacity as a public officer, to wit: as a member of the Illinois Prisoner Review Board, he knowingly performed an act which he knew he was forbidden by law to perform, to wit: in connection with an agreement with Ronald Matrisciano under which in return for Ronald matrisciano's assistance in obtaining employment in Las Vegas for Victor Brooks' son, Nicolas Brooks, Victor Brooks would vote to parole Harry Aleman, a committed person in the custody of the Illinois Department of Corrections, Victor Brooks voted to parole Harry Aleman, in violation of Illinois Compiled Statutes, Chapter 720, Chapter 5/33-3(b), and against the peace and dignity of the same People of the State of Illinois.**

98. On or about December 9, 2005, the Illinois Attorney General's Office issued a statement to the news media where in it was stated:

**How Harry Aleman had access to a high-ranking IDOC [Illinois Department of Corrections] official and why a member of the PRB [Illinois Prisoner Review Board] would vite for his release are serious questions that have been raised. We allege that public corruption is part of the answer.**

99. On or after November 8, 2005, the Defendants Mark Ross, Joseph Ponsetto and/or Edward C. Carter, III, having determined through their investigations that there was no credible evidence to support the allegations that Plaintiff aided and abetted Ronald Matrisciano in a "scheme" to cause a writing to be transmitted by fax from within Will County, Illinois to the Illinois Prisoner Review Board and "in furtherance of the scheme Victor Brooks voted to parole Harry Aleman.

100. On or after December 17, 2002, at least one or more of the Defendants knowingly and intentionally gave and/or provided and/or used misleading and/or false information during the criminal

investigations and/or inquiries of Plaintiff which played an essential and/or influential and/or significant role in the indictment for wire fraud, arrest and continued prosecution of Plaintiff.

101. On or after November 8, 2002, at least one or more of the Defendants knowingly and intentionally gave and/or provided and/or used misleading and/or false information which played an essential and/or influential and/or significant role in causing the prosecuting attorney to seek and/or pursue the Grand Jury indictment for wire fraud, arrest and continued prosecution of Plaintiff.

102. Plaintiff is informed, believes and alleges that the Defendants while acting in concert with other State of Illinois officials and employees of the Attorney General's Office, Department of Corrections and Prisoner Review Board did knowingly, intentionally and maliciously prosecute Plaintiff and Ronald Matrisciano in retaliation for Plaintiff and the said Ronald Matrisciano exercising rights and privileges under the Constitutions and laws of the United States and State of Illinois.

103. On or about December 9, 2005, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was indicted by Grand Jury, and charged with committing the offense of Wire Fraud in violation of <u>Illinois Compiled Statutes</u>, Chapter 720,

Section 5/17-24(a), under Bill of Indictment Number 5 CF 336, Count VI, in the Circuit Court of the Fifteenth Judicial Circuit, Lee County, Illinois, to wit:

> **in connection with a parole hearing for Harry Aleman, a committed person in the custody of the Illinois Department of Corrections Ronald Matrisciano devised a scheme to defraud the public of the intangible right to the honest services of Victor Brooks and for the purpose of executing the said scheme he caused a writing to be transmitted by fax from within Will County, Illinois to the Illinois Prisoner Review Board; that Victor Brooks aided and abetted Ronald Matrisciano in the said scheme in that he accepted an advantage to which he was not entitled in return for agreeing to vote to parole Harry Aleman; and that the last act in furtherance of the scheme was committed after December 16, 2002 when some time after December 16, 2002 Victor Brooks voted to parole Harry Aleman, in violation of Illinois Compiled Statutes, Chapter 720, Chapter 5/17-24(a), and against the peace and dignity of the same People of the State of Illinois.**

104. On or about March 19, 2007, at the close of the People of the State of Illinois' evidence against Plaintiff and Ronald Matrisciano (Defendants) in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, Case Numbers 05 C1671 and 06 CF 458, Judge Patrick W. Kelley granted the Defendants' motions for directed verdicts finding the said Defendants "not guilty on all counts".

105. Plaintiff is, and at all times material to this action, was, a good, honest and law abiding citizen of the State of Illinois and United States, and his neighbors, community members, professional associates, friends and family deservedly held a good and high

opinion of Plaintiff until Defendants' actions.

## COUNT I: Civil Rights Violation
### 42 U.S.C., Sec. 1983

1-105. For a first cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-105 above, as and for the said Paragraphs 1-105 of this Count I.

106. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants knowingly and intentionally acted to subvert and pervert the due course of justice by depriving Plaintiff of his Constitutionally guaranteed rights to be free from criminal prosecution except upon probable cause.

107. As a direct and proximate result of one or more of Defendants' actions, Plaintiff has been caused to endure restrictions on his liberty and right to travel thereby depriving Plaintiff of his Constitutionally guaranteed rights to be free from unlawful and unreasonable seizures.

108. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants knowingly and intentionally withheld information and/or evidence necessary for his fair and impartial trial thereby acted to subvert and pervert the due course of justice by depriving Plaintiff of his Constitutionally guaranteed rights to be free from criminal prosecution except upon probable cause.

109. As a direct and proximate result of Defendants' joint, several

23

and concerted unlawful and malicious physical and/or mental abuse of Plaintiff, Defendants intentionally and maliciously, or with deliberate and callous disregard and indifference of Plaintiff's constitutional rights, acted to deprive Plaintiff of his rights to due process of the laws, equal protection of the laws, and impeded the due course of justice, in violation of the Constitution of the United States, and Title 42 U.S.C., Section 1983.

### COUNT II: Conspiracy
### 42 U.S.C., Section 1983

1-108. For a second cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-108 Count I, as and for the said Paragraphs 1-108 of this Count II.

109. Plaintiff is informed, believes and alleges that at all times material to this action, Defendants, and each of them, were the agents and employees of each of the remaining Defendants and were acting within the course, scope and purpose of such agency and employment and did conspire among each other to commit the above alleged intentional, malicious and callous acts in violation of Plaintiff's rights under the Constitution, and Title 42 U.S.C., Section 1983.

110. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants, in furtherance of their alleged conspiracy, did commit one or more overt acts, including but not limited to the act of seeking an indictment against Plaintiff for official misconduct.

## COUNT III: Conspiracy
### 42 U.S.C., Section 1983

1-109. For a third cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-109 Count II, as and for the said Paragraphs 1-109 of this Count III.

110. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants, in furtherance of their alleged conspiracy, did commit one or more overt acts, including but not limited to the act of seeking an indictment against Plaintiff for wire fraud.

## COUNT IV: Malicious Prosecution
### Official Misconduct

1-109. For a fourth cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-109 Count II, as and for the said Paragraphs 1-109 of this Count IV.

110. On, about and after December 13, 2005, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was arrested and deprived of his freedoms and liberty, and arraigned on the offense of Official Misconduct in violation of Illinois Complied Statutes, Chapter 720, Section 5/33-3(b), under Case Number 05 CF 1671, Count V, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois.

111. On and between December 13, 2005 and March 19, 2007, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was deprived of his freedoms and liberty, and

prosecuted on the offense of Official Misconduct in violation of
Illinois Complied Statutes, Chapter 720, Section 5/33-3(b), under
Case Number 05 CF 1671, Count V, in the Circuit Court of the
Seventh Judicial Circuit, Sangamon County, Illinois.

112. On or about March 19, 2007, Plaintiff was acquitted, found not
guilty of the offense of Official Misconduct in violation of
Illinois Complied Statutes, Chapter 720, Section 5/33-3(b), under
Case Number 05 CF 1671, Count V, in the Circuit Court of the
Seventh Judicial Circuit, Sangamon County, Illinois, following a
bench trial.

113. Plaintiff's acquittal on or about March 19, 2007, of the
offense of Official Misconduct in violation of Illinois Complied
Statutes, Chapter 720, Section 5/33-3(b), under Case Number 05 CF
1671, Count V, in the Circuit Court of the Seventh Judicial
Circuit, Sangamon County, Illinois, following a bench trial, was a
final determination of said case as to and in favor of Plaintiff.

114. As a direct and proximate result of Plaintiff being accused,
investigated, indicted, arrested, confined and prosecuted by
Defendants, Plaintiff has been caused to suffer divers physical
and/or emotional harms and injuries, to wit: nervousness, mental
and physical anxiety, mental and physical distress, and mental and
physical aches, hurts and pains.

115. As a direct and proximate result of Defendants' concerted
unlawful and malicious physical and/or mental abuse of Plaintiff,

26

Defendants intentionally and maliciously, and/or with deliberate and callous indifference and disregard of Plaintiff's rights, and totally without probable cause therefor, contrary to United States laws, Illinois law and Plaintiff's will, and intending thereby to cause Plaintiff to be wrongfully imprisoned and deprived of liberty, wrongfully and unlawfully caused Plaintiff to be charged, arrested, imprisoned, arraigned and prosecuted.

116. As a direct and proximate result of Defendants' concerted unlawful and malicious physical and mental abuse of Plaintiff, Defendants knowingly and intentionally, and/or with deliberate and callous indifference and disregard of Plaintiff's rights, did at the said times and places willfully and wantonly and falsely accuse Plaintiff of violating said <u>Illinois Compiled Statutes</u>, Chapter 720, Section 5/33-3(b); and then and there, in a willful and wanton manner, falsely charge, arrest, detain and prosecute Plaintiff, all against his will.

117. As a direct and proximate result of Defendants' said accusations, investigations, arrest, detention, imprisonment and prosecution of Plaintiff, Plaintiff was exposed to severe public disgrace and humiliation, caused to suffer great pains and anguish of body and spirit thereby, and further caused Plaintiff, in and about defending said charges and establishing Plaintiff's innocence thereof, expended or lost large sums of money in counsel and attorneys' fees and costs of litigation, and from necessary

diversions of Plaintiff's time and attentions from Plaintiff's ordinary and usual affairs of life, business and occupation, to wit: Plaintiff has been, and will continue to be, caused to suffer great and substantial losses in income, incur or be obligated to incur large sums in attorneys' fees, and other costs of litigation.

## COUNT V: Malicious Prosecution
## Wire Fraud

1-109. For a fifth cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-109 Count III, as and for the said Paragraphs 1-109 of this Count V.

110. On, about and after December 13, 2005, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was arrested and deprived of his freedoms and liberty, and arraigned on the offense of Wire Fraud in violation of <u>Illinois Complied Statutes</u>, Chapter 720, Section 5/17-24(a), under Case Number 05 CF 1671, Count VI, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois.

111. On and between December 13, 2005 and March 19, 2007, and as a direct and proximate result of one or more of the Defendants' actions, Plaintiff was deprived of his freedoms and liberty, and prosecuted on the offense of Wire Fraud in violation of <u>Illinois Complied Statutes</u>, Chapter 720, Section 5/17-24(a), under Case Number 05 CF 1671, Count VI, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois.

112. On or about March 19, 2007, Plaintiff was acquitted, found not

guilty of the offense of Wire Fraud in violation of <u>Illinois Complied Statutes</u>, Chapter 720, Section 5/17-24(a), under Case Number 05 CF 1671, Count VI, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, following a bench trial.

113. Plaintiff's acquittal on or about March 19, 2007, of the offense of Wire Fraud in violation of <u>Illinois Complied Statutes</u>, Chapter 720, Section 5/17-24(a), under Case Number 05 CF 1671, Count VI, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, following a bench trial, was a final determination of said case as to and in favor of Plaintiff.

114. As a direct and proximate result of Plaintiff being accused, investigated, indicted, arrested, confined and prosecuted by Defendants, Plaintiff has been caused to suffer divers physical and/or emotional harms and injuries, to wit: nervousness, mental and physical anxiety, mental and physical distress, and mental and physical aches, hurts and pains.

115. As a direct and proximate result of Defendants' concerted unlawful and malicious physical and/or mental abuse of Plaintiff, Defendants intentionally and maliciously, and/or with deliberate and callous indifference and disregard of Plaintiff's rights, and totally without probable cause therefor, contrary to United States laws, Illinois law and Plaintiff's will, and intending thereby to cause Plaintiff to be wrongfully imprisoned and deprived of

liberty, wrongfully and unlawfully caused Plaintiff to be charged, arrested, imprisoned, arraigned and prosecuted.

116. As a direct and proximate result of Defendants' concerted unlawful and malicious physical and mental abuse of Plaintiff, Defendants knowingly and intentionally, and/or with deliberate and callous indifference and disregard of Plaintiff's rights, did at the said times and places willfully and wantonly and falsely accuse Plaintiff of violating said Illinois Compiled Statutes, Chapter 720, Section 5/17-24(a); and then and there, in a willful and wanton manner, falsely charge, arrest, detain and prosecute Plaintiff, all against his will.

117. As a direct and proximate result of Defendants' said accusations, investigations, arrest, detention, imprisonment and prosecution of Plaintiff, Plaintiff was exposed to severe public disgrace and humiliation, caused to suffer great pains and anguish of body and spirit thereby, and further caused Plaintiff, in and about defending said charges and establishing Plaintiff's innocence thereof, expended or lost large sums of money in counsel and attorneys' fees and costs of litigation, and from necessary diversions of Plaintiff's time and attentions from Plaintiff's ordinary and usual affairs of life, business and occupation, to wit: Plaintiff has been, and will continue to be, caused to suffer great and substantial losses in income, incur or be obligated to incur large sums in attorneys' fees, and other costs of litigation.

## COUNT VI: Conspiracy
### Common Law

1-117. For a sixth cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-117 Count IV, as and for the said Paragraphs 1-117 of this Count VI.

118. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants, in furtherance of their alleged conspiracy, did commit one or more overt acts, including but not limited to the act of seeking an indictment against Plaintiff for Official Misconduct.

## COUNT VII: Conspiracy
### Common Law

1-117. For a seventh cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-117 Count V, as and for the said Paragraphs 1-117 of this Count VII.

118. Plaintiff is informed, believes and alleges that at all times material to this action, one or more of the Defendants, in furtherance of their alleged conspiracy, did commit one or more overt acts, including but not limited to the act of seeking an indictment against Plaintiff for Wire Fraud.

## COUNT VIII: Intentional Infliction of Emotional Distress

1-117. For an eighth cause of action against the Defendants, Plaintiff re-alleges Paragraphs 1-117 Count V, as and for the said Paragraphs 1-117 of this Count VIII.

118. Plaintiff is informed, believes and alleges that the

Defendants knowingly and intentionally engaged in the above described extreme and outrageous conduct thereby inflicting severe emotional distress upon Plaintiff.

## COUNT IX: Punitive Damages

119. The conduct of the Defendants, Mark Ross, Joseph Ponsetto, Edward C. Carter, III, Jorge L. Montes, Norman M. Sula and Kenneth D. Tupy, as set forth in Counts I-VIII, was willful, wanton, malicious and one with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages in a sum in excess of $3,000,000.00, jointly and severally, as to each Defendant.

## COUNT X: Attorney's Fees and Costs
## 42 U.S.C., Sec. 1988

120. Plaintiff seeks attorney's fees and costs and expenses of litigation incurred in bringing and completing this action as to Counts I, II and III, pursuant to the provisions of Title 42, Section 1988.

## COUNT XI: Jury Trial Demand

121. Plaintiff demands trial by jury on all issues so triable.

## COUNT XII: Prayer for Relief

**FOR REASONS STATED HEREIN**, Plaintiff, **VICTOR BROOKS**, requests judgment against the Defendants, jointly and severally, and in favor of Plaintiff for the following sums:

a. actual and compensatory damages in excess of $1,000,000.00;

b. punitive damages in excess of $3,000,000.00; and

c. Plaintiff's cost of litigation and attorney's fees pursuant to Title 42, Section 1988.

Respectfully submitted,

BY: /S/ Arvin Boddie
    ARVIN BODDIE, Attorney for
    Plaintiff, **VICTOR BROOKS**

ID No. 6189448
A. BODDIE, Attorney at Law
P.O. Box 288910
Chicago, Illinois 60628-8910
(773) 928-9551
(773) 928-9513 [fax]
aboddieattyatlaw@sbcglobal.net