FILED

AUGUST 25, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CV 2417 |
| | ) | |
| v. | ) | The Hon. James B. Zagel |
| | ) | |
| LISA MADIGAN, Illinois Attorney | ) | |
| General, *et al.* | ) | |
| | ) | |
| Defendants. | | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME Defendants, Illinois State Police Investigator MARK ROSS, Assistant Attorneys General JOSEPH PONSETTO and EDWARD C. CARTER, III, Illinois Prisoner Review Board Members JORGE L. MONTES  and NORMAN A. SULA, and Illinois Prisoner Review Employee KENNETH D. TUPY,  ("Defendants"), by their attorney, Lisa Madigan, Illinois Attorney General, and respectfully submit their motion to dismiss pursuant to FRCP 12(b)(1) and (6).  In support thereof, the Defendants submit the following Memorandum of Law:

### INTRODUCTION

Plaintiff Victor Brooks ("the Plaintiff") filed a twelve-count First Amended Complaint (hereinafter "FAC") on July 11, 2008 (Docket #24) purporting to state a cause of action for violations of Plaintiff's civil rights under 42 U.S.C. 1983 and state law arising out of his arrest and prosecution for wire fraud and official misconduct.  The FAC is organized into 12 counts, but actually consists of eight counts and five causes of action.

The Plaintiff has sued two Assistant Attorneys General, an Illinois State Police officer, two members of the Illinois Prisoner Review Board, and legal counsel to the Prisoner Review

Board.  He seeks compensatory and punitive damages against these six State officials in their official capacities.

The Plaintiff alleges that "one or more of the Defendants," at various times, wrongfully: (1) violated Plaintiff's civil rights in violation of Section 1983 (FAC ¶¶105-109); (2) conspired to intentionally violate his civil rights relating to his official misconduct charge (¶¶109-110 at 24);[1] (3) conspired to intentionally violate his rights relating to his wire fraud charge (¶¶109-110 at 25); (4) maliciously prosecuted him for official misconduct (¶¶110-107 at 25-28); (5) maliciously prosecuted him for wire fraud (¶¶110-117 at 28-30); (6) conspired to indict him for the official misconduct  (¶118 at 31); (7) conspired to indict him for wire fraud (¶118 at 31); and (8) caused Plaintiff intentional infliction of emotional distress (¶118 at 31).

Plaintiff further alleges that as a result of this alleged conduct, he has suffered "divers [*sic*] physical and emotional harms and injuries" such as nervousness, mental and physical anxiety, mental and physical distress, and mental and physical aches, hurts and pains."  *Id.* at ¶114 at 26.  The Plaintiff consequently seeks compensatory damages in excess of $1 million and punitive damages of $3 million against all Defendants.  (¶119 and Count XII at 32).  He also seeks recovery of attorneys fees and costs that he expended in his criminal trial (¶117 at 30) and for fees and costs associated with bringing this action pursuant to 42 U.S.C. §1988.  (¶120 at 32). The Defendants respectfully move to dismiss the Complaint under 12(b)(1) and (6) for the reasons that follow.

---

[1] Because Plaintiff's First Amended Complaint contains numerous duplicate paragraphs and mis-numberings, citations to this Complaint will include references to paragraph and page number.

### STANDARD FOR DISMISSAL

Under federal notice pleading standards, a complaint must describe a claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and its allegations must plausibly suggest that the plaintiff has a right to relief. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n. v. Concentra Health Serv.,* 496 F.3d 773, 776 (7th Cir 2007). In ruling on a motion to dismiss, courts must accept as true all well-pled allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). However, the court is not constrained by the legal characterizations placed on those allegations by the plaintiff. *Republic Steel Corp. v. Penn. Engineering Corp.*, 785 F. 2d 174, 183 (7th Cir. 1986). Bare legal conclusions attached to narrated facts will not suffice to state a claim for which relief may be granted. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Furthermore, courts need not ignore facts set forth in the complaint that undermine the plaintiff's legal claims, nor accept without question the accuracy of plaintiff's legal conclusions. *American Nurses' Ass'n v. Ill.*, 783 F.2d 716, 724 (7th Cir. 1986).

### ARGUMENT

The Defendants first move to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction. The Complaint must be dismissed because the Defendants, as State officials acting in their official capacity, are not "persons" for the purposes of Section 1983. Additionally, as to Plaintiff's state law claims against the Defendants, sovereign immunity precludes any recovery against them in both their official and their individual capacities.

Dismissal is also appropriate under 12(b)(1) because the Defendants are entitled to various immunities. First, the Defendants are absolutely immune from Plaintiff's state law claims as a matter of law and pursuant to the public official immunity doctrine. Moreover, the Assistant Attorneys General are immune from liability as prosecutors. Finally, Defendant Ross, an Illinois State Police investigator, is also immune for giving testimony in Plaintiff's criminal case.

The Defendants further move for dismissal pursuant to Rule 12(b)(6) because the Plaintiff fails to state a claim under federal pleading standards. In addition to failing to state a claim generally, the Plaintiff fails to state a claim for the four apparent causes of action alluded to in the complaint: (1) a general federal civil rights violation; (2) a state law claim for Malicious Prosecution; (3) a federal and state law claim for Conspiracy; and (4) a state law claim for Intentional Infliction of Emotional Distress. Lastly, Plaintiff fails to allege personal involvement (a requirement under Section 1983), and many of the claims contained in Plaintiff's Complaint are time barred by the statute of limitations.

## I.    MOTION TO DISMISS PURSUANT TO RULE 12(B)(1).

### a.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.

#### i.   Defendants Are State Officials Acting in Their Official Capacity and Therefore Not "Persons" for the Purposes of Section 1983.

Plaintiff brings multiple §1983 claims, but he does not specify whether these claims are brought against the Defendants in their official or individual capacities. A §1983 complaint "that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their official capacity." *Stevens v. Umstead*, 131 F.3d 697, 706 (7th Cir. 1997). Therefore, the Plaintiff's Amended Complaint is against the Defendants in their official capacity.

But the Plaintiff goes further and admits in his pleading that the Defendants "were acting within the course, scope, and purpose" of their "agency and employment". (FAC ¶109 at 24). By this admission, Plaintiff essentially pleads himself out of his Section 1983 claims. A state official acting in his official capacity is not a "person" within the meaning of 42 U.S.C. § 1983.[2] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Collier v. Illinois Dept. of Human Rights*, 221 F.3d 1338 (7th Cir. 2000); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999). While it is true that state officials literally are persons, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Michigan,* 491 U.S. at 71. As such, it is no different from a suit against the State itself. *Id.* And because the State is a not a "person" under Section 1983, it cannot be liable under Section 1983.

Consequently, the Court must dismiss Plaintiff's federal claims against the Defendants in their official capacities for lack of jurisdiction because Defendants are not "persons" within the meaning of Section 1983, under *Will v. Michigan*.

>        ii.      *Sovereign Immunity Bars Plaintiff's State Law Claims Against The Defendants In Any Forum Other Than The Illinois Court Of Claims.*

Plaintiff's state law tort claims for conspiracy, malicious prosecution and intentional infliction of emotional distress in Counts IV, V, VI, VII, and VIII of his amended complaint should be dismissed for an additional reason — the Illinois Court of Claims has exclusive jurisdiction over such claims. The State law claims against the Defendants in their official capacities are therefore barred by the doctrine of state sovereign immunity. *See Richman v.*

---

[2] Section 1983 provides as follows: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983 (emphasis added).

*Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Benning v. Bd. of Regents*, 928 F.2d 775, 778-79 (7th Cir. 1991) (stating that "State rules of immunity govern actions in federal court alleging violations of state law").

It is not disputed that each Defendant is an employee of the state – the Plaintiff admits as much in his Complaint. (FAC ¶¶109 at 24). Under Illinois law, suits seeking monetary damages against state officials or employees may only be brought in the Illinois Court of Claims. *See* 745 ILCS 5/1 (2008) (except as provided in the Court of Claims Act, the State of Illinois shall not be made a defendant or party in any court). The Court of Claims Act provides, in part, that the Court of Claims "shall have exclusive jurisdiction to hear and determine . . .[a]ll claims against the State for damages in cases sounding in tort . . . ." 705 ILCS 505/8(d) (2008). The purpose of sovereign immunity is to protect the State from interference with the performance of governmental functions and to preserve and protect State funds. *People ex. rel Manning v. Nickerson*, 184 Ill.2d 245, 248 (1998). If a judgment for a plaintiff could operate to control the actions of the State, a court lacks jurisdiction to entertain such an action. *Robb v. Sutton*, 147 Ill. App. 3d 710, 713 (4th Dist. 1986).

It is also well established in Illinois that the Court of Claims is the proper forum for suits seeking damages against prosecutors. In *Sneed v. Howell*, the Fifth District addressed whether a cause of action against a State's Attorney must be brought in the Court of Claims. 306 Ill.App. 3d 1149 (5th Dist. 1999). The plaintiff, administrator of an estate for a woman murdered by her ex-husband, filed suit against the Jefferson County State's Attorney for negligence and willful and wanton misconduct. *Id.* at 1152. Two weeks prior to her murder, the victim complained that her ex-husband was stalking and harassing her, but the State's Attorney did not prosecute him, allegedly because the State's Attorney was a friend of the victim's ex-husband. *Id.* Regardless of

any alleged negligence or misconduct, the court concluded that the State's Attorney was a state employee acting within the scope of his employment. *Id.* at 1156. Thus, the circuit court lacked subject matter jurisdiction over the case; the plaintiff's claims against the State's Attorney's Office could only be brought in the Court of Claims. *Id.*

Plaintiff's state law claims against the Defendants relate solely to their investigation, initiation, and prosecution of criminal charges against Plaintiff. Those activities are clearly within the scope of state employee authority. Moreover, the Plaintiff admits that the Defendants "were acting within the course, scope and purpose" of their employment. *See* FAC at ¶109 at 24. Thus, the Illinois Court of Claims has exclusive jurisdiction over Plaintiff's state law claims against the Defendants and under FRCP 12(b)(1), these claims should be dismissed for lack of subject matter jurisdiction.[3]

> **b.    The Court Lacks Subject Matter Jurisdiction Over the Plaintiff's Claims Because Defendants Are Entitled to Various Immunities.**

> *i.   The Defendants Are Immune From All of Plaintiff's State Law Claims.*

Plaintiff's state law claims should also be dismissed because each of the Defendants are entitled to absolute immunity. In *Morton v. Hartigan*, 145 Ill.App.3d 417, 422, 425 (1st Dist. 1986), the plaintiff was an Assistant Attorney General who was terminated for "unprofessional conduct on the job." The plaintiff filed suit against the Attorney General and certain supervisors for retaliatory discharge, defamation, and invasion of privacy. *Id.* The defendants invoked the doctrine of absolute immunity. *Id.* at 422. On appeal, the court recognized that the defendants were entitled to absolute immunity and that the trial court properly dismissed the complaint. *Id.*

---

[3] To the extent Plaintiff's FAC can be read to sue the Defendants in their individual capacities, the Complaint still fails as a matter of law. *See Sass v. Kramer,* 72 Ill.2d 485, 491 (1978) (sovereign immunity "cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested").

The court further noted the following rationale for the absolute immunity defense: " * * * to protect public officials from undue harassment by civil litigation for acts committed by law to their control or supervision, and within the scope of their duties and authority." *Id.,* (citing *DeBusk v. Harvin,* 212 F.2d 143, 147 (5th Cir. 1954)). Moreover, the Court noted that "the existence of an improper motive does not overcome the assertion of an absolute privilege." *Id.* Therefore, under *Morton,* the Plaintiff's state law claims are barred by absolute immunity – regardless of whether Plaintiff alleges an improper motive. *See also Livas v. Petka*, 711 F.2d 798 (7th Cir. 1983) (holding that State's Attorney was entitled to absolute immunity in retaliatory discharge case – even if the dismissal was politically motivated).

This absolute immunity extends to each state law common law cause of action that the Plaintiff is attempting to assert. *See Morton*, 145 Ill.App.3d at 430 (citing *In McKinney v. Whitfield,* 736 F.2d 766, 769, (D.C.Cir.1984) (recognizing that "the absolute immunity doctrine has been applied to virtually every common law tort including, but not limited to, malicious prosecution, tortious interference with business, false arrest, blackmail, fraud, and intimidation")). Thus, the Defendants are entitled to absolute immunity for Plaintiff's state law claims and the Court should dismiss the Complaint with prejudice.

> ii.      *All Defendants are Entitled to Public Official Immunity For Plaintiff's State Law Claims.*

Illinois recognizes the doctrine of public official immunity to protect officials from liability for good faith acts falling within their official discretion. *Larson v. Darnell*, 113 Ill.App.3d 975, 976 (3rd Dist. 1983). Consequently, the Defendants are also shielded from liability for Plaintiff's state law claims under the Public Official Immunity doctrine. The doctrine exists so that government officials need not fear lawsuits for actions undertaken while in office – "suits which would consume time and energies which would otherwise be devoted to

governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo*, 360 U.S. 564, 571 (1959). That is, "government officials should not be impeded from acting in ways that they perceive are in the public's best interest because of fears of personal liability." *Campbell v. White*, 207 Ill.App.3d 541, 553 (4th Dist. 1991). To be protected, the actions must be taken within the scope of authority of the public official and not as a result of malicious motives. *Hicks v. Williams*, 104 Ill.App.3d 172, 177 (5th Dist. 1982), *appeal denied*, 91 Ill.2d 569 (1982).

An additional concern to personal financial liability is "public liability and an officer's legitimate fear of defending his many policy choices in court." *Kelly v. Ogilvie*, 64 Ill.App.2d at 148 (1st Dist. 1965). Public official immunity is available so that a good-faith mistake in judgment does not subject a public decision maker to suit. *Id.* at 148. As the Illinois Supreme Court has reasoned, any other rule would be a great hardship on public officials and would discourage citizens from seeking public employment. *McCormick v. Burt*, 95 Ill. 263, 265 (1880).

To determine whether public official immunity applies to a particular individual in a given situation, a Court looks to the source of the duty the employee is charged with breaching in committing the allegedly negligent act. *Currie v. Lao*, 148 Ill.2d 151, 159 (Ill. 1992). Courts will consider whether the conduct was of a "uniquely governmental function" in making this analysis. *See Id.*; *Loman v. Freeman*, ___ N.E.2d___, 2008 WL 1746680 at *5 (Ill. 2008). However, Courts have consistently held that "[w]here the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment, sovereign immunity will bar maintenance of the action…." *Currie*, 148 Ill.2d at 159.

Here, each Defendant is a State employee and public official who engaged in conduct unique to government.[4] These discretionary governmental actions are *sui generis.* An individual cannot take these actions on their own volition without the State's "uniquely governmental function" providing the basis for the action. Moreover, each of these "uniquely governmental function[s]" involve discretionary actions. *See, e.g., Malley v. Briggs,* 475 U.S. 335, 341-42 (1986) (prosecutor seeking indictment before a Grand Jury involves discretionary judgment); *Anderson v. Creighton,* 483 U.S. 635, 638 (1987) (police officer's discretionary functions includes filing for a warrant with the belief that there was probable cause to support the application); *People v. Jarrett*, 372 Ill.App.3d 344, 352 (1st Dist. 2007) (Prisoner Review Board functions are discretionary). Thus, the Defendants' are entitled to public official immunity for their discretionary functions relative to Plaintiff's allegations.

### iii.    *The AAG Defendants Are Entitled To Absolute Prosecutorial Immunity From Plaintiff's Claims.*

Plaintiff's claims against AAG Joseph Ponsetto and AAG Edward Carter, III ("the AAG Defendants") arise out of the preparation, initiation, and prosecution of felony charges against him. Based on the allegations set forth in Plaintiff's Amended Complaint, the AAG Defendants are entitled to absolute prosecutorial immunity from Plaintiff's claims under both federal and state law.

### 1.    *Plaintiff' § 1983 claims are barred by absolute prosecutorial immunity.*

It is well settled that prosecutors are absolutely immune from §1983 suits for damages for initiating a prosecution and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The *Imbler* Court held that absolute prosecutorial immunity extends to the knowing use

---

[4] The Plaintiff admits in his Amended Complaint that the Defendants were acting within the scope of their employment. (FAC ¶109 at 24).

of false testimony and the deliberate suppression of exculpatory evidence. 424 U.S. at 430-31.

For purposes of absolute immunity, it is irrelevant whether the protected party acted negligently,

with malice or in bad faith. *Id.* The decision whether to actually prosecute or not prosecute a

defendant is wholly protected by absolute immunity – even if that decision was made

"maliciously, unreasonably, without probable cause, or even on the basis of false testimony or

evidence." *Smith v. Power,* 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Henry v. Farmer City

State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986)).

     *Imbler* also held that "the duties of the prosecutor in his role as advocate for the State

involve actions preliminary to the initiation of a prosecution." 424 U.S. at 431 n. 33. The Court

noted that "[p]reparation, both for the initiation of the criminal process and for a trial, may

require the obtaining, reviewing, and evaluating of evidence." *Id.* This includes actions

"preliminary to the initiation of a prosecution and actions apart from the courtroom" as well as

out-of-court efforts "to control the presentation of [a] witness' testimony." *Id.* at 430-31 nn. 32-

33.

     The Seventh Circuit has applied *Imbler* to uphold absolute immunity for prosecutors

where the facts are similar to the case at hand. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir.

1997). *Spiegel* is instructive because it involves a §1983 claim for malicious prosecution and

violation of the plaintiff's Fifth and Fourteenth Amendment rights. The plaintiff was charged

with battery following a confrontation with a neighbor. In his claim against the Assistant State's

Attorney who interviewed both parties before deciding to pursue charges, the plaintiff alleged

that the ASA conducted a willfully incomplete and inadequate assessment of the case. *Spiegel,*

121 F.3d at 254. Rejecting the plaintiff's argument that the ASA was only entitled to qualified

immunity because his actions were more akin to an investigator than a prosecutor, the *Spiegel* court held:

> In this case, [the assistant state's attorney] simply evaluated the evidence assembled. He reviewed the police records, **interviewed the parties involved**, and then passed on his assessment of the case to his superior. Thus, regardless of whether the decision to prosecute was a joint one or solely in the hands of [the assistant state's attorney's] superior, the assistant state's attorney is absolutely immune from suit.

*Id*. at 257 (emphasis supplied). Like the defendant in *Spiegel*, the AAG Defendants here reviewed the evidence gathered by police, interviewed the parties involved, and then determined whether charges were appropriate.

The *Spiegel* court distinguished the Supreme Court's decision in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). *Buckley* involved a scenario wherein a prosecutor traveled to a crime scene prior to a suspect's arrest to determine if foot-print evidence taken from the crime scene was sufficiently reliable to constitute probable cause. *Id*. at 262-63. The court held that the prosecutor was acting as an investigator, not an advocate and, therefore, was not entitled to absolute immunity. *Id.* at 275.

No such facts are presented in this case. In an attempt to overcome the AAG's absolute immunity in this case, the Plaintiff alleges that the AAG Defendants participated in three witness "interviews" on three dates in 2005. (FAC ¶¶89-91). But then, in an unsupported leap of logic, the Plaintiff offers the boilerplate and conclusory portrayal of the AAG Defendants "having determined through their *investigations* that there was no credible evidence" to prosecute Plaintiff. (FAC, ¶94) (emphasis supplied). This type of unsupported characterization has been consistently rejected by *Spiegel* and similar cases. Plaintiff at no time alleges that the AAG Defendants performed any acts of an investigatory nature. The amended complaint even

concedes that ISP Investigator Ross began his investigation and issued numerous "Investigative Summary" reports *two years before* the AAG Defendants interviewed prospective witnesses. (*See, e.g,* FAC, ¶¶69-71, 80, 84, 85, 87, 88). Within six month of the conclusion of these interviews, the Grand Jury indicted Plaintiff. (FAC ¶¶90, 97). The AAG Defendants' conduct in this matter is akin to that of a "Felony Review" ASA who reviews the evidence police have collected and interview witnesses involved to determine whether charges are appropriate.

Thus, by Plaintiff's own admission, these interviews constituted the AAG Defendants' reviewing evidence and possible testimony in a criminal trial. This type of conduct is firmly within the ambit of initiating a judicial proceeding because it constitutes "appropriate preparation" for presentation at trial. *See Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997 (Prosecutor's conduct in, *inter alia*, interviewing parties involved is sufficient to justify absolute immunity).

Courts have consistently recognized that interviewing witnesses is within a prosecutor's scope of advocacy and therefore protected by absolute immunity. The Seventh Circuit, in particular, has read *Imbler* broadly when determining what prosecutorial activities are entitled to absolute immunity. *See, e.g., Hampton v. City of Chicago*, 349 F.Supp.2d 1075, 1080 (interviewing witnesses, deciding what information was necessary for trial, and approving charges against Plaintiff are "all part of initiating a judicial proceeding" and necessary to ASA's job as a prosecutor); *Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) ("the choice of witnesses to present is part of the prosecutorial function and cannot independently violate anyone's rights…."); *Stokes v. Chicago*, 660 F.Supp. 1459, 1461 (N.D. Ill. 1987) (Prosecutor's alleged agreement to pay prospective witnesses for false testimony is "intimately associated with the judicial phase of a prosecution" and Plaintiff's unsupported allegation that prosecutors were

13

acting as investigators does not defeat absolute immunity).  Plaintiff's attempt to evade this well-established rule with conclusory allegations must be rejected.

The Plaintiff also alleges that the AAG Defendants, in conducting these witness interviews, engaged in a willful and malicious conspiracy to violate Plaintiff's constitutional rights.  (*See* FAC ¶109, 110 at 24-25)  These allegations still fail as a matter of law because they do not pierce the AAG prosecutorial immunity.  In *Redwood v. Dobson* the Defendant in a criminal proceeding sued the Assistant State's Attorney in a related civil litigation claiming Constitutional violations, conspiracy, and malicious prosecution.  In affirming the District Court's dismissal on absolute prosecutorial immunity grounds, Judge Easterbrook expanded on his observation that "Plaintiffs treat all contact between prosecutors and complaining witnesses as 'conspiracy.'"  476 F.3d 462, 466-67 (7th Cir. 2007):

> No prosecutor handles a case in an isolation tank.  Discussions with victims, witnesses, and police are common.  If these ordinary acts amount to 'conspiracy to violate the Constitution' then immunities will be worthless and both witnesses and prosecutors would be induced to remain passive rather than enforce for the criminal law vigorously.

*Id.*

After all, a "prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court.  The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."  *Imbler*, 424 U.S. at 424-25.  Here, the AAG Defendants at all times were working as an "advocate for the State" in participating in interviews of witnesses in advance of the Grand Jury indictment.  In modern litigation, it could be considered unethical or even malpractice for a prosecutor to fail to interview witnesses prior to a court proceeding.  The Court should therefore grant Defendant's Motion to Dismiss as it relates to Plaintiff's Section 1983 claims.

2.    *Plaintiff's state law claims against the AAG Defendants are likewise barred by absolute immunity.*

Because the AAG Defendants' conduct falls with the scope of traditional prosecutorial functions, as discussed in subsection A above, and because Plaintiff's state law claims against the AAG Defendants for malicious prosecution, conspiracy, and intentional infliction of emotional distress are based on the same factual allegations contained in Plaintiff's §1983 claims, public official immunity operates to bar the state law claims against the AAG Defendants, as well.  *See Aboufariss v. City of DeKalb*, 305 Ill.App.3d 1054, 1065 (2d Dist. 1999).  In discussing prosecutorial immunity, Illinois courts have mirrored the U.S. Supreme Court's pronouncement in *Imbler.  See, e.g., White v. City of Chicago,* 369 Ill.App.3d 765 (1st Dist. 2006).

The Illinois Appellate Court recently reaffirmed the ongoing vitality of absolute prosecutorial immunity in the face of allegations of intentional misconduct by a prosecutor.  In *White v. City of Chicago,* the plaintiffs alleged that the prosecutor: (1) "investigated" the murder for which the plaintiffs were charged and determined they had no connection to the crime; (2) determined that another person had committed the murders; (3) determined that the main prosecution witness was untruthful; and (4) determined that the physical evidence did not support the charges.  369 Ill.App.3d 765, 771-72 (1st  Dist. 2006).  The plaintiffs further alleged that the prosecutor conducted a second investigation that supported the findings of the original investigation. *Id.* Despite actual knowledge of these facts, the plaintiffs alleged, the prosecutor suppressed the information and induced a prosecution witness to testify falsely by paying him $4,000.  *Id*. While recognizing the severity of these allegations, the Court held that the prosecutor's interviewing of two known witnesses was "intimately associated with the judicial

phase of the criminal process" and affirmed the trial court's dismissal on absolute immunity grounds. *Id.* at 1092-93.

In this case, as in *White*, Plaintiff alleges that the AAG Defendants participated in three witness "interviews" on three dates in 2005. (FAC ¶¶89-91). The Plaintiff then makes the unsupported claims that these interviews somehow constitute "investigations." (FAC, ¶94). Plaintiff at no time alleges that the AAG Defendants performed any acts of an investigatory nature. As noted above, the amended complaint even concedes that ISP Investigator Ross began his investigation and issued numerous "Investigative Summary" reports *two years before* the AAG Defendants interviewed prospective witnesses in advance of trial. (*See, e.g,* FAC, ¶¶69-71, 80, 84, 85, 87, 88). Thus, by Plaintiff's own admission, these interviews constituted the AAG Defendants' reviewing evidence and possible testimony in a criminal trial. This type of conduct is firmly within the ambit of initiating a judicial proceeding because it constitutes "appropriate preparation" for presentation at trial. *See White,* 861 N.E.2d at 1092-94 (Prosecutors' witness interviews constituted "evaluating evidence" and thus entitled to absolutely immunity); *Spiegel,* 121 F.3d 251 at 257 (Prosecutor's conduct in, *inter alia*, interviewing parties involved is sufficient to justify absolute immunity).

Also, as in *White*, Plaintiff alleges here that the AAG Defendants, despite possessing clear evidence of his innocence, continued the prosecution against an innocent criminal defendant. (FAC ¶¶94-102) For purposes of absolute immunity, it is irrelevant whether the protected party acted negligently, with malice, or in bad faith. *Imbler* at 431. In fact, the immunity applies even where a prosecutor knowingly used false testimony and deliberately suppressed exculpatory evidence. *Id.*

*White* makes it clear that Plaintiff's allegations against the AAG Defendants relating to the continued prosecution of Plaintiff relate solely to matters within the traditional scope of prosecutorial duties performed by a prosecutor. Given the holdings in the above-cited cases, Plaintiff's state law claims against the AAG Defendants are barred by absolute immunity.

      iv.     *The AAG Defendants and Defendant Ross are Absolutely Immune from liability for their conduct before the Grand Jury and at Trial.*

To the extent Plaintiff's Amended Complaint contains claims against the AAG Defendants and Defendant Ross for their conduct before the Grand Jury and at trial, they are entitled to absolute immunity. First, the Seventh Circuit has clearly established that police officers testifying before a grand jury are entitled to absolute immunity. *Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir.1995); *Kincaid v. Eberle*, 712 F.2d 1023, 1023-24 (7th Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983). This immunity protects officers from suits under 42 U.S.C. § 1983 for giving false grand jury testimony to the damage of potential plaintiffs. *Id*. A police officer is also entitled to immunity for withholding exculpatory evidence from the grand jury. *See Bernal v. Shifflet*, 1995 WL 549038 * 4 (N.D. Ill. 1995) ("[w]ith respect to [plaintiff's] § 1983 claim that defendant…knowingly failed to provide exculpatory testimony to the grand jury, [defendant] is absolutely immune from suit").

The Seventh Circuit identified the policies underlying testimonial immunity as follows: "Whether testifying at trial or in a pretrial proceeding, a witness who knows he may be subjected to costly and time-consuming civil litigation for offering testimony that he is unable to substantiate may consciously or otherwise shade his testimony in such a way as to limit potential liability." Because of such tendencies to shade testimony, witness immunity is accorded to encourage full disclosure as a means of ascertaining the truth. *Curtis*, 48 F.3d at 285 (quoting *Holt v. Casteneda*, 832 F.2d 123, 125 (9th Cir.1987)) (citations omitted). Indeed, these policy

considerations are accorded greater weight, and, consequently, the argument for absolute

immunity is stronger, in the grand jury setting than in the trial setting, "because false testimony

before the grand jury is less harmful than false testimony at trial; the grand jury can indict, but

cannot convict." *Kincaid*, 712 F.2d at 1024; *see also Curtis*, 48 F.3d at 285 (quoting *Holt v.*

*Casteneda*, 832 F.2d 123, 125 (9th Cir.1987) ((citations omitted)).

       Moreover, *Briscoe v. LaHue,* 460 U.S. 325 (1983) provides that even a witness at trial

has absolute immunity from suit under Section 1983 for giving false testimony damaging to a

subject of that testimony.  Like the court in *Kincaid,* the court in *Briscoe* was also concerned that

subjecting public officials to Section 1983 liability for their trial testimony "might

undermine…their contribution to the judicial process."  *Id.* at 343.  Therefore, because

Defendant Ross is entitled to absolute immunity for his testimony before the grand jury

proceeding and at trial, Plaintiff's claims against him must be dismissed.

       Likewise, the AAG Defendants are also entitled to absolute immunity because

prosecutors are absolutely immune from liability for their conduct before grand juries and in

presenting evidence at trial. *Burns v. Reed,* 500 U.S. 478, 491 (1991); *Lucien v. Preiner,* 967

F.21d 1166, 1167 (7th Cir.), *cert. denied,* 113 S.Ct. 267 (1992); *Imbler v. Pachtman*, 424 U.S.

409, 431 (1976).  Therefore, any claims that Plaintiff may have against the AAG Defendants

and/or Defendant Ross for their conduct before the grand jury or at Plaintiff's criminal trial must

be dismissed.

      v.     *The PRB Defendants Are Also Entitled To Absolute Immunity From Plaintiff's*
                *Claims.*

       Illinois Prisoner Review Board Members Jorge L. Montes and Norman Sula and Illinois

Prisoner Review Board employee Kenneth D. Tupy (the "PRB Defendants") are also entitled to

absolute immunity to the extent that Plaintiff's claims attack their decisions to grant, deny or

review parole.  Like most other Circuits, the Seventh Circuit has consistently held that parole

board members are absolutely immune from suit for their decisions to grant, deny, or revoke

parole.  *See Walrath v. United States*, 35 F.d 277, 281 (7th Cir. 1994) (collecting cases).  Just as

judges are generally accorded absolute immunity in the performance of their "judicial acts," so

are parole board members granted immunity because their actions are "inexorably connected

with the execution of parole revocation procedures and are analogous to judicial action."  *Id.,*

*quoting Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984).  Moreover, the absolute

immunity extends not only to the actual decision to revoke parole, but also to activities "that are

part and parcel of the decision process."  *See Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir.

1996).  Although not himself a member of the Illinois Prisoner Review Board, Defendant Tupy

is counsel to the Board, and thus, any role he played as a legal advisor is necessarily "part and

parcel" to the decision-making process of the Board itself.  *See id.*

    Plaintiff's FAC does not clearly indicate which actions taken by the PRB Defendants

subject them to any of the individual causes of action.  However, to the extent that any of

Plaintiff's claims attack the PRB Defendants due to their decisions to grant, deny or review

parole (or any actions that are "part and parcel" of that decision process), the PRB Defendants

are absolutely immune from such claims, and Plaintiff's FAC should be dismissed.

    vi.    *Plaintiff's Acquittal Extinguishes His Due Process Claims.*

     In Count I of his Complaint, Plaintiff claims that "one or more of the Defendants

knowingly and intentionally withheld information and/or evidence necessary for his fair and

impartial trial in violation of his constitutional rights."  (FAC, ¶ 108, pg. 23).    This claim is

without merit.  While it is true that a criminal defendant can assert a federal due process claim

against a *police officer* who "withheld information or evidence necessary for the fair and

impartial trial guaranteed by the U.S. Constitution," *See Ineco v. City of Chicago,* 286 F.3d 994,

998-99 (7th Cir. 2002) (emphasis added), *citing Newsome v. McCabe,* 256 F.2d 747, 752 (7th Cir.

2001), there must be a reasonable probability that the result of the proceeding would have been

different if the evidence had been disclosed to the defense. *U.S. v. Jackson,* 780 F.2d 1305,

1309-10 (7th Cir. 1986), citing *U.S. v. Bagley,* 473 U.S. 667 (1985).

In *Gregory v. Oliver,* the plaintiff alleged that the police violated his Fourteenth

Amendment rights by failing to provide the prosecutor exculpatory evidence that would have

allegedly prevented his prosecution on drug charges. 226 F.Supp.2d 943, 953 (N.D. Ill. 2002).

The court found that the officers' purported failure to turn over exculpatory evidence did not

violate the plaintiff's constitutional rights because the plaintiff was acquitted even without the

withheld evidence. *Id.* Thus, the withholding of that information could not have had an adverse

impact on the outcome of the trial. *Id.*[5]

Similarly, Plaintiff here was also acquitted on all criminal charges brought against him.

Therefore, Plaintiff cannot demonstrate that the alleged withholding of information had an

adverse impact on the outcome of his trial and his federal due process claim must be dismissed.

In addition, to the extent that Plaintiff's claim regarding the withholding of information is

brought against the AAG Defendants, they are entitled to absolute immunity. "Failing to

disclose material evidence or even actively concealing it is considered an act of misconduct

intimately associated with the judicial phase of a prosecution and the prosecutor is entitled to full

immunity for suits based on such acts." *Bernal v. Shifflet,* 1995 WL 417552 at * 2 (N.D. Ill.

---

[5] While several other judges of this district court judges have disagreed with Judge Shadur's holding in *Gregory* that an acquitted defendant has no due process claim, *see, e.g.*, *Kidd v. City of Chicago,* No. 02 C 9534, 2003 WL 22243938, *2 (N.D. Ill. Sept. 26, 2003) (J. Bucklo); *Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1023-24 (N.D. Ill. 2003) (J. Kennelly); and *Carvajal v. Dominguez,* No. 05 C 2958, 2007 WL 1687275, * 8-*9 (N.D. Ill. June 11, 2007) (J. Holderman), the Defendants respectfully request that this Court follow Judge Shadur's reasoning and find that Plaintiff's acquittal extinguishes his due process claim.

1995) (*citing Imbler v. Pachtman,* 424 U.S. 409, 431 (1976)); *Broscie v. LaHue,* 663 F.2d 713, 721-22 (7th Cir. 1981). This immunity extends not only to acts of willful suppression of exculpatory evidence, but additionally for arranging arrests if they arise out of the grand jury proceedings. *Subacz v. Schumacher,* 1992 WL 361781 at * 4-5 (N.D. Ill. 1992). Even the knowing use of perjured testimony is considered an act entitled to absolute immunity, *Briscoe,* 663 F.2d at 721-22, as is supplying the court with false and misleading arguments. *Lawrence v. Conlon*, 1995 WL 153273, at *4 (N.D.Ill. 1995); *see also Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir.1978) (granting absolute immunity to prosecutors against allegations of destroying and falsifying line up reports and police tapes of incoming phone calls). Therefore, Plaintiff may not pursue a due process claim against the AAG Defendants or Defendant Ross.

## II.    MOTION TO DISMISS UNDER 12(B)(6)

### a.  Plaintiff Fails to State a Claim Under *Bell Atlantic*

To state a claim under federal notice pleading standards, a complaint must set for a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation and citation references omitted); *see also EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Plaintiff's allegations must therefore plausibly suggest a right to the relief which raises a possibility above a "speculative level." *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n. 14. "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is

plausible on its face.'" *Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007),
*quoting Bell Atlantic*, 127 S.Ct. at 1974.

How many facts satisfy this pleading standard depends on the type of case.  *Limestone
Development Corp. v. Village of Lemont,* 520 F.3d 797, 803-804 (7th Cir. 2008).  "In a complex
antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in
the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not
"largely groundless."  *Id.* (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 231-32 (3d
Cir.2008)).  "If discovery is likely to be more than usually costly, the complaint must include as
much factual detail and argument as may be required to show that the plaintiff has a plausible
claim."  *Id.*

Plaintiff's complaint seeks damages against six State officials.  The Amended Complaint
provides numerous irrelevant allegations that do not apply to any particular cause of action (*see,
e.g,* ¶32, asserting that Rod Blagojevich was elected Governor, ¶¶ 19, 35-41, 62, regarding
factual allegations concerning non-party Ronald Matrisciano).  Moreover, throughout his
Complaint, Plaintiff directs his numerous claims against "one or more of the defendants" rather
than naming the individual defendants against whom his claims are brought (*see, e.g.,* ¶96,
asserting that "at least one or more of the Defendants" provided false testimony or information to
the Grand Jury).  Likewise, Plaintiff also fails to specify which of his counts pertain to which
Defendants (*see*, *e.g.,* ¶ 110, directing his claim for conspiracy against "one or more of the
Defendants.").  Simply invoking the name of a potential defendant is not sufficient to state a
claim against that individual.  See *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A
plaintiff cannot state a claim against a defendant by including the defendant's name in the
caption.").  Plaintiff therefore fails to properly place the Defendants on notice as to which claims

are directed against them, making it virtually impossible to answer Plaintiff's Complaint.

Plaintiff's Complaint also fails to comport with Federal Rules of Civil Procedure 8(e), which

requires that a pleading be "simple, concise, and direct." Since the federal rules and *Bell Atlantic*

require Plaintiff to plainly make allegations regarding his cause of action, and he has clearly

failed to do so, the Court should grant Defendant's motion to dismiss.

### i.  Failure to State a Claim for Equal Protection Violation

Plaintiff's Amended Complaint notes in its preliminary statement that the Defendants

conspired with "intent to deny Plaintiff equal protection and due process of the laws…."  (FAC

at 1).  To the extent the Amended Complaint can be construed to assert an Equal Protection

violation, it fails to state a claim.  Under § 1983, a plaintiff alleging an equal protection violation

must allege that (1) he is a member of a protected class; (2) he was similarly situated to members

of the unprotected class; (3) he was treated differently from members of the unprotected class;

and (4) the defendant acted with discriminatory intent.  *McNabola v. Chicago Transit Authority*,

10 F.3d 501, 513 (7th Cir. 1993) (*citing McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir.

1989)).   Here, Plaintiff fails to allege that he is a member of a protected class (or any facts from

which the Court could infer that he is a member of a protected class).  Likewise, he fails to allege

that the defendants acted with discriminatory intent.  Therefore, his equal protection claim must

be dismissed.  *See Davis v. Rodriguez,* 1995 WL 86748 (N.D. Ill. 1995) (holding that plaintiff

had not stated a claim for a violation of the Equal Protection Clause when he had not alleged that

he was a member of a protected class of persons or alleged any intentional discrimination on the

part of the defendant).

### ii.  Failure to State a Claim for Malicious Prosecution

Plaintiff's complaint also fails to state a claim for malicious prosecution.  In Illinois, such a claim must allege: (1) that a Defendant commenced or continued a judicial proceeding against the Plaintiff; (2) the prosecution terminated in plaintiff's favor; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) resulting damages.  *Allen v. Berger*, 336 Ill.App.3d 675, 677 (1st Dist. 2002).  Plaintiff's complaint, while alleging #3 in conclusory fashion, does not provide any supporting facts to indicate what lack of probable cause exists.  Likewise, Plaintiff has failed to sufficiently allege that any of the Defendants acted with malice.  (*See* ¶¶115-116 at 26-27; ¶¶115-116 at 29-20).  Moreover, to the extent Plaintiff pleads malicious prosecution under Section 1983, such a claim must be based on personal responsibility.  *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) (internal quotation marks omitted).[6]  Since Plaintiff fails to make these allegations precisely against each individual Defendant, his Complaint is rendered deficient for the purposes of 12(b)(6).  Accordingly the Court should dismiss the Complaint on those grounds.

### iii.     *Plaintiff Fails to State a Claim for Conspiracy.*

Plaintiff's Complaint must also be dismissed because it fails to state a claim for conspiracy.  Until recently, to state a claim for conspiracy in federal court, a Plaintiff need merely to "indicate the parties, the general purpose, and approximate date, so that the defendant has notice of what he is charged with."  *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).  However, since *Bell Atlantic v. Twombly*, Courts have recognized that "blanket assertions" are not enough to state a claim – instead, there must be a "showing" and some factual

---

[6] Plaintiff's failure to allege personal involvement merits the dismissal of all of his Section 1983 claims *See* Section v. below.

allegations in the Complaint to provide "fair notice" and the "grounds" on which the claim rests. *Lyttle v. Killackey*, 528 F.Supp.2d 818, 831 (N.D. Ill. 2007). In *Lyttle,* the Court held that the Plaintiff must do more than merely make a "blanket assertion" that a conspiracy occurred – he must actually provide the grounds upon which his conspiracy claim rests. *Id.* at 831. While a Court can infer a conspiratorial agreement from circumstantial evidence, the *Lyttle* Court held that the Plaintiff's Complaint did not even meet that threshold. *Id.* The Court noted that it would have to make an inferential "jump" to find a conspiracy based on Plaintiff's base accusations. *Id.*

Similarly, Plaintiff's Amended Complaint makes only blanket assertions of a conspiracy between the Defendants in Counts II and III. He fails to meet the requirements in *Walker* that the claims indicate the specific parties, the general purpose – or even the approximate date – so that the Defendants can be notified of the allegations. Instead, the Plaintiff merely notes that "the Defendants" (he does not specify which of the six are involved) "did conspire among each other to commit" certain acts in violation of Section 1983 and to seek an indictment. (*See* FAC ¶¶109-110 at 24 (Count II) and ¶¶109-110 at 25 (Count III)). Plaintiff's failure to even approximate the date of an alleged conspiracy results in him failing to state a claim under the basic requirements of *Walker* or the more specific requirements of *Twombly*.

Plaintiff's conclusory claims of conspiracy not only fail to state a claim, but they also ring hollow because it is customary for law enforcement and prosecutors to communicate during a criminal case. As noted above, Judge Easterbrook in *Redwood v. Dobson* observed that "Plaintiffs treat all contact between prosecutors and complaining witnesses as 'conspiracy.'" 476 F.3d 462, 466-67 (7th Cir. 2007). Just because police officers and prosecutors communicate on a particular case does not constitute an unlawful conspiracy. As Judge Easterbrook noted in a passage that bears repeating: "No prosecutor handles a case in an isolation tank. Discussions

with victims, witnesses, and police are common." *Id.* To pierce the absolute immunity in such a case would render immunities "worthless." *Id.*

A "prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424-25. The same goes for ISP Defendant Ross who is duty bound as a police officer to investigate criminal activity. As the *Imbler* court noted, both the prosecutors and the police should not have to be constrained in making a decision based by "the consequences in terms of his own potential liability in a suit for damages." *Id.*

The Plaintiff also makes a "common law" conspiracy claim. To the extent this claim is rooted in Illinois law, this count should be dismissed pursuant to FRCP 12(b)(6). "Civil conspiracy consists of (1) an agreement between two or more persons (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, and (3) some tortious or illegal act by a party to the agreement in furtherance of the agreement." *Karas v. Strevell*, 369 Ill.App.3d 884, 919 (2006). Because Illinois is a fact-pleading jurisdiction, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Illinois Non-Profit Risk Management Ass'n v. Human Service Center*, 378 Ill.App.3d 713, 743 (Ill. App. 4th Dist. 2008) (quoting *Fritz v. Johnston*, 209 Ill.2d 302, 318 (2004)).

Here, Plaintiff musters no more than a mere conclusion that there was a conspiracy. *See* FAC ¶¶118 at 31. More facts are needed to sustain a common law conspiracy count. The Court

should therefore grant Defendant's Motion to Dismiss because the Plaintiff has not alleged and cannot allege a conspiracy.

   iv.   *Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.*

The Complaint must also be dismissed because it fails to state a claim for intentional infliction of emotional distress ("IIED").  In Illinois, to state a claim for IIED, the Plaintiff must allege (1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe emotional distress.  *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 38 (1st Dist. 1997).

Here, the Plaintiff fails to allege the second element of IIED.  (FAC ¶118 at 31). Even then, his single sentence allegation fails to satisfy *Twombly*.  Therefore, the Court should dismiss his complaint for failure to state a claim.

   v.   *Plaintiff Fails to Allege Personal Involvement Under Section 1983.*

Individual liability under § 1983, no matter what the constitutional theory, must be based on personal responsibility.  *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) (internal quotation marks omitted). The Defendants may be held individually liable if they: (1) participated directly in the alleged constitutional deprivations; (2) acted or failed to act with reckless disregard of Plaintiff's constitutional rights; or (3) directed the conduct that violated Plaintiff's constitutional rights or knew of it and consented to it. *Id.* at 274; *see also Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982).

Plaintiff's Amended Complaint fails to allege personal responsibility on behalf of the Defendants. For example, Plaintiff vaguely refers to "one or more of the Defendants" without identifying the nature of the action in dispute. (*See, e.g.,* FAC ¶¶95-97 at 19; ¶¶106-108 at 23). As such, Plaintiff's Complaint must be dismissed for failure to comport with the personal involvement requirement of Section 1983.

### vi. *Plaintiff's Complaint Is Time Barred by the Statute of Limitations.*

Plaintiff's Amended Complaint should also be dismissed because it is time barred by the statute of limitations. In Illinois, a two-year statute of limitations applies to §1983 actions. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir, 1989). Here, Plaintiff has pleaded himself out of court. For example, in paragraphs of Plaintiff's Complaint, he apparently alleges the conspiracy began in December of 2002 and early 2003, (FAC ¶¶65-74), the malicious prosecution, civil rights violations, and intentional infliction of emotional distress claims arose in April 2004 through January 2005 (FAC ¶¶79-89). Plaintiff first filed his Complaint in State court on March 18, 2008. Therefore, these claims are barred by the two-year statute of limitations.

While the statute of limitations is an affirmative defense under Rule 8(c), the Seventh circuit has recognized that a 12(b)(6) motion is the appropriate vehicle for objection. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 928-29 (7th Cir. 2005), citing *Hondo, Inc. v. Sterling*, 21 F.3d 775, 777 (7th Cir.1994); *but see Leavell v. Kieffer*, 189 F.3d 492, 494-95 (7th Cir. 1999) ("When a complaint shows that the time for litigation has passed, the Court may enter judgment on the pleadings under Fed.R.Civ.P. 12(c)"). Therefore, the Court should dismiss those portions of Plaintiff's Complaint prior to the two-year statute of limitations as being time-barred.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendants respectfully move this Court to dismiss Plaintiff's complaint in its entirety and with prejudice for the reasons stated herein, and for any other relief this Court deems just and reasonable.

Respectfully submitted,

August 18, 2008

/s/ Ronald A. Rascia_____

LISA MADIGAN
Attorney General of Illinois

RONALD RASCIA
KATHLEEN FORD
ALLAN V. ABINOJA
MARK BINA
Assistant Attorneys General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-3000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this brief was served upon all parties of record this 18th day of August, 2008 by electronic filing pursuant to Rule XI of the General Order On Electronic Case Filing.

/s/ Ronald A. Rascia