UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR BROOKS, <br><br> Plaintiff, <br><br> v. <br><br> MARK ROSS; JOSEPH PONSETTO; EDWARD C. CARTER, III; JORGE L. MONTES; NORMAN M. SULA; AND KENNETH D. TUPY, <br><br> Defendants. | No. 08 CV 2417 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Defendants, consisting of an Illinois State Police Investigator, Assistant Attorneys General ("AAG") and members of the Prisoner Review Board ("PRB"), seek dismissal of a lawsuit by Plaintiff, a former member of the PRB, alleging section 1983 violations, and claims of malicious prosecution, conspiracy, and intentional infliction of emotional distress ("IIED"), arising out of his prosecution for official misconduct and wire fraud. Plaintiff names twelve counts, although only eight of these counts allege discernable causes of action.[1] For the following reasons, Defendants' motion to dismiss is granted.

---

[1] In addition to counts alleging section 1983 violations, malicious prosecution, conspiracy and IIED, Plaintiff includes additional counts entitled "Punitive Damages," "Attorney's Fees and Costs," "Jury Trial Demand," and "Prayer for Relief." As these counts fail to state claims upon which relief can be granted, they are formally dismissed.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Defendants' motion to dismiss should be granted only if Plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). Stated another way, I should not grant Defendants' motion "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). That said, Plaintiff's "obligation to provide the grounds of his entitlement for relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

## III. STATEMENT OF RELEVANT FACTS

Plaintiff's first amended complaint alleges the following facts. From 1977 until 1993, Plaintiff was employed in the Illinois Department of Corrections ("IDOC") where he met Ronald Matrisciano, another employee. In 1995, Plaintiff was appointed to serve on the Illinois Prisoner Review Board. In early 2002, on one of Plaintiff's official visits to Stateville Correctional Facility, Matrisciano, then Assistant Deputy Director, District One, approached Plaintiff and disclosed his intention to testify before the PRB in support of inmate Harry Aleman's parole.

Soon after, the two had another conversation during which Plaintiff spoke about an upcoming trip to Las Vegas to visit his son, who had recently moved there. In October of 2002, the two spoke again by telephone about Matrisciano's plans to travel to Las Vegas and potentially visit with Plaintiff's son while he was there.

On December 17, 2002, Matrisciano testified before the PRB on Aleman's behalf. Plaintiff also participated in the hearing. In a role call vote of eleven PRB members, Plaintiff provided the one vote in opposition to a motion to deny parole for Aleman. Plaintiff then provided one of three votes in opposition to a motion to continue Aleman's parole eligibility for three years. At no time did any member of the fifteen-member PRB state that Plaintiff or Matrisciano offered anything of value in return for the member's vote in favor of paroling Aleman. No official connected to the PRB, including Defendant PRB members Jorge Montes and Norman Sula, and PRB counsel Kenneth Tupy, made any attempt to prevent Matrisciano from testifying.

After the hearing, several media inquiries were made to the IDOC regarding Aleman's hearing. IDOC Chief of Communications, Sergio Molina, publicly stated that the IDOC "certainly [doesn't] condone a staff member presenting themselves before the Prisoner Review Board to advocate for an inmate." IDOC initiated an inquiry into the circumstances surrounding Matrisciano's testimony, and Matrisciano was later demoted. Soon after, IDOC issued a legal opinion stating that the Department "no longer has a written policy concerning staff recommendations to the Parole Board." The investigation was then referred to the Illinois State Police.

In February 2003, Mark Ross of the Illinois State Police prepared the first of several investigative reports stating it was alleged that "Matrisciano and an unknown member of the parole board, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman." Shortly thereafter, Ross allegedly interviewed a confidential source at IDOC who stated that Aleman alleged that an IDOC employee was to testify on his behalf.[2]

In April 2003, Matrisciano filed a civil suit against IDOC regarding his demotion. The following year, the Illinois Civil Service Commission issued a determination that IDOC had violated Illinois Personnel Rules with regard to Matrisciano. Matrisciano was re-employed with IDOC. The State Police investigation, however, continued. Plaintiff was notified that he was denied re-nomination as a member of the PRB by Governor Rod R. Blagojevich.

In May and June of 2004, Ross provided summaries of interviews conducted with PRB Defendants Jorge Montes and Norman Sula. In January of 2005, Ross provided summaries of an interview conducted with Harry Aleman. Ross again issued an investigative report stating it was alleged that "Matrisciano and an unknown member of the PRB, later identified as Victor Brooks, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman." Ross and another investigator later issued investigative reports reflecting that Defendants Joseph Ponsetto and Edward C. Carter, III, both AAGs, were present and assisted during interviews with a former IDOC employee.

---

[2] At various times Plaintiff says Ross "alleged" certain things. Read as a whole and in light of common police practice, I interpret this to mean that Ross reported the allegations to be investigated and the witnesses' allegations about the incidents. Plaintiff does not allege that Ross claimed to be a witness to the incidents themselves. Plaintiff has not attached a copy of Ross' reports, which might support a contrary reading.

According to Plaintiff, in November 2005, Defendants Ross and/or Ponsetto and/or Carter determined that there was no credible evidence to support allegations against Plaintiff, and at least one of them then fabricated the allegation that Plaintiff accepted employment assistance for his son in exchange for his favorable vote at Aleman's hearing. In December 2005, Plaintiff was indicted by the Grand Jury and charged with official misconduct and wire fraud. Plaintiff was tried in March of 2007 and acquitted on a motion for directed verdict.

Plaintiff alleges that at least "one or more" of the Defendants provided false or misleading information in conjunction with Plaintiff's indictment, arrest and prosecution for misconduct and wire fraud.

## IV. DISCUSSION

Defendants make several arguments in support of their motion to dismiss. First, Defendants assert that Plaintiff's section 1983 claim should be dismissed pursuant to Rule 12(b)(1). Defendants maintain that the court lacks subject matter jurisdiction over Plaintiff's section 1983 claim, as Defendants were acting in their official capacities and, as such, are precluded from suit under section 1983. Defendants also argue that sovereign immunity precludes recovery by the Plaintiff. Finally, Defendants claim that a variety of immunities apply. Second, Defendants move for dismissal pursuant to Rule 12(b)(6), arguing that Plaintiff has failed to state claims for section 1983 violations, malicious prosecution, conspiracy, and IIED.

A. Lack of Subject Matter Jurisdiction

*1. State officials under section 1983*

Section 1983 states that:

Every person who, under color of any statute, ordinance,

5

> regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

State officials acting in their official capacities are not "persons" for the purposes of section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). However, state officials sued in their individual capacities are indeed "persons." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Defendants argue that because Plaintiff fails to specify in which capacity he is suing Defendants, the complaint should be construed as a suit against Defendants in their official capacities. However, Plaintiff's Amended Complaint does state that Plaintiff is seeking damages from "the individual defendants." And although there is "a presumption that a section 1983 claim against a public official is an official-capacity suit, this presumption is not conclusive." *Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988). "A court must also consider the manner in which the parties have treated the suit." *Id.* Plaintiff does not allege that Defendants were acting pursuant to a state policy or custom. Also, in this case, just as in *Conner*, Defendants have raised the defense of qualified immunity, or public official immunity, which is only applicable in a personal capacity suit. Defendants have thus prepared to answer this suit as if it were one for personal liability. Therefore, Plaintiff's suit should be reversibly treated as a suit against Defendants in their individual capacities.

Defendants argue that because they took the complained-of actions in their official capacities, they are not persons. However, state officials may be liable in their personal capacity for actions they take in their official capacity. *Hafer*, 502 U.S. at 27. Without such a provision,

Congress' intention "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position," cannot be realized, and section 1983 would have no teeth. *Id.*

### 2. Sovereign immunity

Defendants maintain that sovereign immunity bars Plaintiff's state law claims against Defendants in their official capacities in any forum other than the Illinois Court of Claims. Illinois State Lawsuit Immunity Act 745 Ill. Comp. State. 5/1. "[I]f the state law claim is deemed to be against the state, then it must be dismissed." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). An agent's conduct will be attributed to the state for purposes of sovereign immunity if: "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Id.* (citation omitted). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Id.* (citation omitted). Plaintiff alleges violations of the Constitution, in which case, sovereign immunity affords no protection. Taking Plaintiff's allegations as true, Defendants cannot seek protection under the Illinois State Lawsuit Immunity Act.

### 3. Other immunities

#### a. Absolute immunity from state law claims

The absolute immunity defense exists "to protect public officials from undue harassment by civil litigation for acts committed by law to their control or supervision, and within the scope

of their duties and authority." *Morton v. Hartigan*, 495 N.E.2d 1159, 1162 (Ill. App. 1986). Government officials are entitled to absolute immunity if their actions are reasonably related to their official duties. *Villagrana v. Village of Oswego*, No. 04 C 4603, 2005 WL 2322808, at *5 (N.D. Ill. Sept. 22, 2005). Although improper motive does not overcome the assertion of privilege, constitutional violations do not fall within scope of duties and thus absolute immunity would not apply.

In order to determine whether Defendants' actions fall within the realm of immunity, further factual analysis is required. *See Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate."). Accepting as true Plaintiff's allegations, absolute immunity affords no protection to Defendants' constitutional violations. Similarly, public official immunity cannot be determined at this stage. To invoke public official immunity, an official's actions must be discretionary acts performed within the scope of his authority and cannot be the result of a malicious motive. *Hicks v. Williams*, 432 N.E.2d 1278, 1281 (Ill. App. 1982). Accepting as true Plaintiff's allegations of malice, Defendants' actions are not protected by public official immunity. Defendants' motion to dismiss Plaintiff's state law claims based on absolute or public official immunity is denied.

### b. Prosecutorial immunity for section 1983 claims

AAG Defendants maintain that Plaintiff's section 1983 claims based on initiating a prosecution and presenting the State's case are barred by absolute prosecutorial immunity. "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The decision

whether to prosecute is protected even if made "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274.

Plaintiff's complaint alleges malicious prosecution by the AAG Defendants. Plaintiff claims that Defendants assisted police investigations by participating in interviews that took place prior to his indictment by the grand jury and that "Defendants do not have or enjoy absolute immunity for advising and assisting the police investigators prior to having established probable cause to arrest Plaintiff." In other words, Plaintiff contends that AAG Defendants acted as investigators and are therefore not entitled to prosecutorial immunity. Taking these allegations as true, the AAG Defendants' motion to dismiss Plaintiff's section 1983 claims based on prosecutorial immunity might be denied, but for a lack of clarity in the complaint. The allegations of the complaint are equally consistent with the proposition that the prosecutors' actions were related to "preparation for the initiation of a prosecution," which often includes work to determine whether there is probable cause to charge a potential defendant. The allegations that Ponsetto and Carter were present at the interviews of a former IDOC employee do not preclude the possibility that their evaluation of the potential witness may well have been part of determining probable cause. The existence of prosecutorial immunity does not depend on

9

the fact that there is probable cause to prosecute. Therefore, I decline to rule on this issue.

### c. Prosecutorial immunity against state law claims

AAG Defendants further maintain that Plaintiff's state law claims against them are barred by absolute prosecutorial immunity. A prosecutor acting as an advocate, engaging in activities "intimately associated with the judicial phase of the criminal process," is absolutely immune from prosecution. *White v. City of Chicago*, 861 N.E.2d 1083, 1088 (Ill. App. 2006) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In *White*, an assistant State's Attorney maintained that he was entitled to prosecutorial immunity when an arrestee brought state law claims of wrongful imprisonment, intentional infliction of emotional distress and conspiracy. The court adopted the functional approach put forth in *Buckley* and determined that indeed, the ASA had been acting as an advocate in the course of interviewing a potential witness and former suspect. The court examined the nature of interviews, combined with timing - one month before trial and five years after indictment - to determine that prosecutors were acting as advocates. *Id.* at 774. In this case, Plaintiff alleges that AAG Defendants assisted police in interviews which preceded the Plaintiff's indictment; however such allegations do not preclude the possibility that the AAG Defendants' activities were "intimately associated with the judicial phase of the criminal process." Due to this lack of clarity in Plaintiff's complaint, I decline to rule on this issue.

### d. Immunity of AAG Defendants and Defendant Ross for their conduct before the Grand Jury and at Trial

Although Plaintiff does not specifically allege liability for Defendants' conduct before the Grand Jury, Plaintiff's allegations suggest that "one or more of the Defendants" is liable for playing a role in causing the prosecuting attorney to seek the indictment. Defendants maintain

that, to the extent Plaintiff alleges liability for conduct before the Grand Jury and at trial, the AAG Defendants and Defendant Ross are entitled to immunity. Police officers testifying before a Grand Jury are entitled to absolute immunity from section 1983 liability, even where they present perjured testimony. *See Curtis v. Bembenek*, 48 F.3d 281, 284-85 (7th Cir. 1995). Likewise, the AAG Defendants are also entitled to absolute immunity before a grand jury, even where statements made are false or defamatory. *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir. 1992). Therefore, Defendants' motion to dismiss Plaintiff's claims against Defendants for their conduct before the grand jury is granted.

e. Absolute immunity of PRB Defendants

Plaintiff does not clearly indicate which actions taken by PRB Defendants subject them to individual liability. Defendants move to dismiss any of Plaintiff's claims that attack PRB Defendants due to their decision to grant, deny or review parole, or to engage in any actions that are part and parcel of the decision-making process. PRB members are absolutely immune from suit for their decisions to grant, deny or review parole. *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994). This immunity extends to activities "that are part and parcel of the decision process." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7thCir. 1996). Although Defendant Tupy is not himself a member of the PRB, he serves as legal counsel to the board, and his actions as legal advisor are considered part and parcel to the decision-making process. Therefore, Plaintiff's claims against PRB Defendants and Defendant Tupy concerning their decisions to grant, deny or review parole, are dismissed.

B. Failure to State a Claim

    *1. Malicious Prosecution*

In Illinois, "[t]o state a claim for malicious prosecution, [a plaintiff is] required to allege facts showing (1) commencement or continuation of a judicial proceeding by the defendants, (2) termination of the prosecution in [plaintiff's] favor in a manner indicative of [plaintiff's] innocence, (3) the absence of probable cause for the proceeding, (4) the presence of malice, and (5) resulting damages." *Allen v. Berger*, 784 N.E.2d 367, 369 (Ill. App. 2002). Defendants move to dismiss for failure to state a claim for malicious prosecution, arguing Plaintiff failed to allege facts supporting the absence of probable cause.[3]

Plaintiff's complaint alleges that "[o]n, before, or after December 19, 2002, no Member of the 15-member Illinois Prisoner Review Board has stated that Ronald Matrisciano offered any Member of the Board anything of value in return for the member's vote in favor of Inmate Harry Aleman's parole." Plaintiff does not plead any further facts which indicate that he was prosecuted without probable cause. However, Plaintiff does allege that beginning in March of 2003, Defendant Mark Ross issued the first of a series of investigative reports alleging that Matrisciano and "an unknown member of the parole board, had accepted payment to speak favorably on behalf of inmate Harry Aleman" at his parole hearing. Plaintiff further alleges that in January of 2005, Ross prepared another investigative report alleging that Mastriciano and "an unknown member of the Illinois Prisoner Review Board, later identified as Victor Brooks, had

---

[3] Defendants also argue that Plaintiff fails to plead Defendants acted with malice, however, Plaintiff's complaint does indeed allege that Defendants acted maliciously in wrongfully imprisoning him and causing him to be arrested, imprisoned, arraigned and prosecuted.

12

accepted payment to speak favorably" on behalf of inmate Aleman. These facts seem to point to the fact that probable cause was indeed established.

Plaintiff does little to clarify what facts, if any, support the absence of probable cause. Plaintiff's response only points out, with little accompanying explanation, that the question of probable cause is within the province of the jury. However, while this addresses the issue of probable cause at the summary judgment stage, it has no bearing on the pleading requirements for malicious prosecution. Plaintiff fails to plead facts that support his conclusion that he was tried without probable cause; therefore, Plaintiff's state claim for malicious prosecution must be dismissed.

### 2. Conspiracy

"Civil conspiracy consists of (1) an agreement between two or more persons (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, and (3) some tortious or illegal act by a party to the agreement in furtherance of the agreement." *Illinois Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr.*, 884 N.E.2d 700, 711 (Ill. App. 2008) (quoting *Karas v. Strevell*, 860 N.E.2d 1163, 1195 (2006)). However, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Id.* (quoting *Fritz v. Johnston*, 807 N.E.2d 461, 471 (2004)). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831 (N.D. Ill. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, - - - U.S. - - - -, 127 S. Ct. 1955, 1964-65 n.3.)) Plaintiff fails to meet this requirement. He does not

13

allege specifically which parties were involved in the alleged conspiracy, nor does he indicate when the alleged conspiracy was born. Therefore, Plaintiff's common law conspiracy claims must be dismissed. [4]

### 3. Intentional infliction of emotional distress

Under Illinois law, to state a claim for IIED, Plaintiff must allege (1) that the complained of conduct is extreme and outrageous; (2) that the actor intended to inflict severe emotional distress or knew there was a high probability that severe emotional distress would result; and (3) that the conduct did in fact inflict severe emotional distress upon the plaintiff. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Defendants correctly point out that Plaintiff fails to allege that Defendants intended to cause Plaintiff severe emotional distress, or that Defendants knew there was a high probability that severe emotional distress would result. Therefore, this claim is dismissed.

### 4. Section 1983 claims

"Individual liability for damages under section 1983 is predicated upon personal responsibility." *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (citation omitted). Where a plaintiff makes allegations of a deprivation of constitutional rights generally, against all defendants, he fails to allege the "element of personal involvement necessary for individual liability under section 1983," and his allegations fail. *Brown v. Illinois Dept. of Public Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004). Here, Plaintiff fails to allege the required element of

---

[4] Plaintiff also alleges two section 1983 conspiracy claims. The sufficiency of the pleadings of these claims is discussed *infra*.

personal responsibility by alleging constitutional deprivations by "one or more of the Defendants." Plaintiff's section 1983 claims are deficient and must therefore be dismissed.[5]

**V. CONCLUSION**

For the foregoing reasons, I am granting Defendants' motion to dismiss Plaintiff's claims for section 1983 violations, malicious prosecution, conspiracy and IIED.

ENTER:

*James B. Zagel*

James B. Zagel

United States District Judge

DATE: November 25, 2008

---

[5] As part of his section 1983 claim, Plaintiff alleges that "one or more of the Defendants knowingly and intentionally withheld information and/or evidence necessary for his fair and impartial trial in violation of his constitutional rights." However, as Defendant correctly points out, Plaintiff's due process claim is extinguished by his acquittal. Where there is no reasonable probability that the allegedly withheld evidence would have changed the result of the proceeding had it been disclosed, the withholding does not violate Plaintiff's constitutional rights. *Gregory v. Oliver*, 226 F. Supp. 2d 943, 954 (N.D. Ill. 2002). In this case, because Plaintiff was acquitted without the withheld evidence, there is no reasonable probability that the result of the proceeding would have been different had the allegedly withheld evidence been disclosed. Therefore, even had Plaintiff's section 1983 claim been properly pleaded, his due process claim would still fail, resulting in its dismissal.